## J. W. LIGGETT, Appellant, v. J. B. LEVY and UNION NATIONAL BANK.

### Division One, March 31, 1911.

1. **PLEADING: Sufficiency: Matter for Court.** It is for the court, not the pleader, to construe a written instrument pleaded as the basis of a suit and appearing in the petition. So that it is for the court to construe a letter which is made the foundation of a cause of action and set forth in full in the petition.

2. **LETTER OF CREDIT: To Bearer Meant to Include His Company.** A bank wrote this letter: "To Whom It May Concern: This letter will be presented to you by J. B. Levy in the interest of the Preferred Bond and Investment Company, who are valued customers of this bank. Their business has always been satisfactory to us and we consider them wide-awake business men. All favors shown to him will be highly appreciated." *Held,* that if this was a letter of credit and commendation it was meant to include Levy as well as the company. It would be so understood by ordinary persons.

3. ————: **Definition: Suit for Money Loaned.** Said letter was not a letter of credit, nor can a suit against said bank by one who loaned money to Levy on the strength of the letter be upheld on the ground that it was a letter of credit. Such a letter has a technical and specific definition and use, and fills a well-known office in effecting exchange. It may be defined to be a letter of request, whereby one person requests some other per-

son to advance money or give credit to a third person, and promises that he will repay or guarantee the same to the person making the advancement, or accept bills drawn on himself for a like amount. It is called a general letter of credit when it is addressed to all persons in general requesting such advancement to a third named person, and a special letter of credit when addressed to a particular person by name. It is usually addressed by a banker or merchant in one place to a banker or merchant in another.

4. ———: Construing Letter: Rule. In construing a letter, made the foundation of a cause of action, a court is not at liberty, in order to fasten liability, to add to or take away words, thereby altering the sense and either enlarging or cramping the assurance given in the letter. The words of such a letter, if not technical, are taken in their ordinary and usual acceptation.

5. ———: ———: Representation of Solvency. Though the said letter says nothing, in direct terms, about the solvency or insolvency of either Levy or the Investment Company, a representation may mean solvency without using the word. If a bank certifies that a certain man or a certain company is a "valued customer of this bank," that "their business has always been very satisfactory to us" and that "we consider them wide-awake business men," that is a roundabout representation of some financial responsibility and solvency. But the studied vagueness of the letter indelibly stamps it on its face as an unstable and insufficient foundation for commercial credit in the borrowing of money.

6. LETTER OF RECOMMENDATION: Loans: Fraud and Deceit: Cause of Action. A bank wrote "to whom it may concern" that "this letter will be presented to you by J. B. Levy in the interest of the Preferred Bond and Investment Company, who are valued customers of this bank. Their business has always been very satisfactory to us and we consider them wide-awake business men. Any favors shown to him will be highly appreciated." Held, that a petition setting forth the letter in haec verba, and charging that on the strength of the letter plaintiff loaned Levy large sums of money, the different loans amounting in a short time to $12,750, and that the statements that they "are valued customers of this bank," that "their business has always been very satisfactory to us" and that "we consider them wide-awake business men," were each and all false and known by the bank to be false, and the bank knew that both Levy and the Investment Company were insolvent and financially worthless, does not state a cause of action for fraud and deceit. There was no such natural connection between the letter and the loans that one may be said to be the proximate

cause of the other. The specific damage is not the reasonable result of the letter. The reasonable object of the letter fell far short of a loan.

7. ———: ———: ———: **Statute of Frauds: Vice-President of Bank.** A court is not required to take judicial notice that the duties of the second vice-president of a bank authorize him to bind the bank and cast liability on it by false statements made in letters of recommendation. A petition setting out the letter in full, and showing it was signed, not by the bank, but by its "2 V.Pres." but containing no allegation that he had been lawfully authorized to sign it, does not, in view of the Statute of Frauds, state a cause of action for fraud and deceit against the bank, by a plaintiff who loaned money on the strength of the false recitals contained in the letter.

8. ———: **Liability of National Bank: Ultra Vires.** Whether or not a national bank can be financially bound and obligated by a letter containing false representations made concerning a matter wholly disconnected from its own affairs and wholly concerning a third party, will not be decided until a case hinging on that issue is presented.

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

AFFIRMED.

*Aleshire & Gundlach* for appellant.

This suit, as shown by the petition, is founded upon a letter of credit or commendation, made by the Union National Bank. The Union National Bank is liable on account of this letter of credit or letter of commendation. R. S. 1909, sec. 2785; Weil v. Schwartz, 21 Mo. App. 372; Felix v. Shirey, 60 Mo. App. 621; Dulaney v. Rodgers, 64 Mo. 201; Dunn v. White, 63 Mo. 181; Cabot v. Christie, 42 Vt. 121.

*Warner, Dean, McLeod & Timmonds* for respondent.

(1) The paper sued on is not, and does not purport to be, a letter of credit to, or commendation of, J. B. Levy. 18 Am. and Eng. Ency. Law, 831-832;

20 Cyc. 1399; 2 Daniel, Neg. Inst. 666. (2) The paper sued on is not a commercial recommendation. (3) A national bank cannot be financially bound or obligated by papers of the character sued on. Com. Nat. Bank v. Pirie, 82 Fed. 799.

LAMM, J.—In 1907, plaintiff sued one Levy and his corporate codefendant, the Union National Bank, in the Jackson Circuit Court, his petition in six counts, each sounding in tort.

The suit was dismissed as to Levy. The bank demurred—one ground being that no count states facts sufficient to constitute a cause of action. The demurrer was sustained. Thereat plaintiff, electing to stand and refusing to plead over, suffered judgment and comes up by appeal.

Each count states a separate cause of action, bottomed on a certain writing, designated by the pleader as a "letter of credit or commendation," alleged to have been issued by the bank to Levy. That letter, set forth in the petition *in haec verba*, reads:

David T. Beals, Pres.
Feriando P. Neal, V. Pres.
W. H. Seeger, 2 V. Pres.
Edwin W. Zea, Cashier.
                                No. 3637.
                        Union National Bank, Capital &
                                Surplus, $1,000,000.
            January 16, 1906, Kansas City, Missouri.
To Whom It May Concern:
        This letter will be presented to you by J. B. Levy in the interest of the Preferred Bond and Investment Company, who are valued customers of this bank. Their business has always been very satisfactory to us and we consider them wide-awake business men.
        Any favors shown to him will be highly appreciated.
                        Yours respectfully,
                        W. H. SEEGER, 2 V. Pres.
233 Sup.—38

To understand questions raised, we need not re-produce the petition word for word, nor consider each count to itself.

Taking the first count, it alleges that Levy was connected with the Preferred Bond and Investment Company, a corporation, doing business in Kansas City; that defendant bank is a corporation organized under the laws of the United States and engaged in banking in said city; that on January 24, 1905, Levy, by his negotiable promissory note of that date, promised to pay plaintiff for value received $1000 on or before six months after date, with interest from date at six per cent per annum, payable annually; that the year of the date of the note was a mistake, it should have been "1906;" that on the 16th day of January, 1906, defendant bank issued, signed and delivered to Levy its "letter of credit or commendation," directed "'To Whom It May Concern,'" in which said letter the public were told that Levy, its bearer, and the Investment Company were valued customers of said bank (here the foregoing letter is set forth); that Levy called upon plaintiff with said letter in his charge and possession and plaintiff relying upon the truthfulness of the letter and upon the statements therein contained entered into an agreement whereby he loaned Levy $3000; that on January 24, 1906, plaintiff paid over to Levy $1000 of said loan and thereafter on February 8, 1906, paid him the other $2000; that at the time of paying the first $1000, plaintiff took from Levy his note of date January 24, first above described; that plaintiff afterwards learned that Levy and the Investment Company were both insolvent and that the statements in the bank's letter were false and untrue; and learned that neither Levy nor the Investment Company was at the date of the letter, nor had they been prior thereto, "valued customers" of the said bank; that the bank well knew that Levy and the Investment Company were insolvent and financially worthless and

knew that fact when the said letter of credit or com-
mendation was issued and delivered; that the state-
ments in the letter were false, fraudulent and untrue,
were made without any acquaintance with Levy or the
Investment Company, and were made well knowing
at the time they were false and untrue "or were made
without any knowledge of the truth or falsity thereof;"
that plaintiff relied upon said statements as true and
so relying was induced to loan and did loan said Levy
said $1000.

The first count concludes as follows: "That by
reason of said false statements so made by defendant
bank, it became and is now liable to plaintiff for the
said sum of $1000, and for which amount together with
interest thereon, from January 24, 1906, plaintiff asks
judgment   . . .   together with costs."

The second count is to recover $2000 loaned Levy
on the 8th day of February, 1906, evidenced by his
promissory note of that date—said $2000 being the re-
mainder of the $3000 loan referred to in the first count.
The third is to recover a loan of $5000 made Levy on
February 10, 1906, evidenced by his note of that date.
The fourth is to recover a loan of $2500 made Levy on
the 19th day of February, 1906, evidenced by his note
of that date.   The fifth is to recover a loan of $2000
made Levy on the 5th day of March, 1906, evidenced by
a note of that date.   The sixth is to recover the money
paid Levy on a sight draft drawn by him on plaintiff
for $250 on the 24th day of March, 1906.

Counts, two to six, inclusive, refer to said letter
of commendation or credit, and (mutatis mutandis)
make the same allegations in regard to the falsity
of the statements made in the first count.

The question is: Does the petition, in any count,
state a cause of action against the bank?

(a).   The letter, being the foundation of each
cause of action and appearing in totidem verbis in the
petition, is here for judicial construction.   It is for

the court, not the pleader, to construe a written instrument pleaded as the basis of a suit and appearing in his petition. [Donovan v. Boeck, 217 Mo. l. c. 83, *et seq.*; see, *arguendo*, Bank v. Hutton, 224 Mo. l. c. 65 *et seq.*; Bank v. Trust Co., 179 Mo. 648.]

(b). One proposition advanced to support the ruling on the demurrer is that the letter does not purport to be one of credit or commendation of Levy. To sustain that proposition learned counsel submit these comments:

"The letter says that it will be presented by J. B. Levy in the interest of the Preferred Bond and Investment Company, who [the company] are valued customers of this bank. Their [the company's] business has always been very satisfactory to us, and we consider them [the company] wide-awake business men. There is nothing there warranting or justifying anybody in relying upon the financial standing or ability of J. B. Levy; nor anything to warrant or justify anybody in making indiscriminate loans of money to him. If plaintiff had had some dealing with the Bond and Investment Company whereby he had lost money or property, he might, with some degree of plausibility, have complained of the bank; but it does not appear that he did have any dealings with that company or that he lost any money or property by or through it, or on its account."

Those comments (for the purpose of the argument alone) run on the theory that the letter is a "letter of credit or commendation," using the phrase of the petition. They say the letter stopped with the Investment Company and did not include Levy in its commendation. But we are of opinion that counsel no little wrench and wound the sense of the letter by too close and over nice analysis. The intended use and office of the letter must be considered to feel for its meaning. It is not likely the writer intended his letter would fall into hands of such formidable people as

judges and lawyers, or that its meaning would be got at syntactically by refined reasoning on grammatical construction or strict logical sequence. It was written doubtless for plain men, who would naturally gather its meaning at a glance from its face. That kind of a man would gather the meaning of that short letter from its face and four corners, and not by applying a technical compass and square, plumb and foot-rule. It says its bearer is Levy; that he will present it in the interest of an Investment Company. Then the relative pronoun "who" is used. "Who," the letter says, "are valued customers of this bank." Counsel argue that *who* refers alone to "company" for its antecedent. But the plural form is used in the following verb and in the noun "customers." Such fact indicates that either Levy was included as a customer or that the matter was purposely left vague by loose writing. If the company was a partnership, the phrase "who are valued customers of this bank" might refer alone to "company." But if the company is an artificial (a juristic) person, viz., a corporation (as it is alleged to be), then it would take another customer, Levy, to either pluralize the verb or make "customers." Presently the writer uses the pronoun "their," the pronoun "them" and the noun "men." The same suggestions are pertinent to those words. But he does not stop there as do learned counsel in their comment. He goes on to say: "Any favors shown to *him* will be highly appreciated." That *him* points to Levy. The rule is that in cases of doubt, the thing least doubtful (sense and justice both considered) is taken. We conclude that if the demurrer had no foot to stand on other than the construction put on the letter by counsel, under this head, it was not soundly ruled.

(c). The petition counts on the letter as either one of credit or of commendation. The distinction between a letter of credit and a letter of mere commendation is so radical that the pleader's character-

ization of the letter as one or the other clearly shows he was perplexed and not sure of his own ground. He was unwilling to stand on the letter as a letter of credit and was also unwilling to eliminate that idea and stand on a liability predicated of the letter as a letter of mere commercial recommendation. In that pickle, he pleads double and in the alternative. Something might be said against using that form of pleading without complying with the statute in that behalf made and provided. [R. S. 1909, sec. 1828.] But waiving that view, let us consider the letter in a double aspect (1) as one of credit and (2) as one of commercial recommendation.

(1) Webster defines a letter of credit to be: First. "A letter or notification addressed by a banker to one or more of his correspondents certifying that the person named therein is entitled to draw on him or his credit up to a certain sum;—often called a *traveler's letter of credit*. When addressed to several correspondents it is called a *circular letter of credit* or *circular note*." Second. "A letter addressed by a banker to the person to whom the credit is given, authorizing him to draw on the maker up to a certain sum, and guaranteeing to accept the draft if duly made; —often called *commercial letter of credit* or *confirming letter of credit*."

Black borrows from 3 Chit. Com. Law, 336, this definition (Black's L. Dic. Tit. Letter of Credit): "An open or sealed letter, from a merchant in one place, directed to another, in another place or country, requiring him, if·a person therein named, or the bearer of the letter, shall have occasion to buy commodities, or to want money to any particular or unlimited amount, either to procure the same or to pass his promise, bill, or bond for it, the writer of the letter undertaking to provide him the money for the goods, or to repay him by exchange, or to give him such satis-

faction as he shall require, either for himself, or the bearer of the letter.''

The codes of California, Montana, and the Dakotas prescribe a definition, viz.: "A written instrument, addressed by one person to another, requiring the latter to give credit to the person in whose favor it is drawn." (25 Cyc. 186.)

In another volume of that standard work (20 Cyc. 1399) such letter is defined, generally, as "a written proposal to a particular person or to the general public to stand as surety or guarantor for the person named in the letter for an amount mentioned therein or for an indefinite amount, which may be accepted by such particular person addressed, or if general, by someone of the general public."

Another standard work (18 Am. and Eng. Ency. Law [2 Ed.], p. 831) sums up the authorities and deduces from them this definition: "A letter of credit (sometimes called a bill of credit) is an open letter of request, whereby one person (usually a merchant or a banker) requests some other person or persons to advance moneys or give credit to a third person, named therein, for a certain amount, and promises that he will repay the same to the person advancing the same, or accept bills drawn upon himself for the like amount."

Other definitions abound in cases and approved text-writers on banking and commercial paper, but they agree in substance with the foregoing. For example: Daniel (2 Dan. Neg. Inst. [5 Ed.], sec. 1790) says: "Letters of credit are instruments of frequent use in commerce, and while not possessing all the characteristics of negotiability which pertain to bills and notes, partake of them to such an extent as to be *necessarily classed as negotiable instruments.* A letter of credit may be defined to be a letter of request, whereby one person requests some other person to advance money or give credit to a third person, and

promises that he will repay or guarantee the same to the person making the advancement, or accept bills drawn upon himself, for the like amount. It is called a general letter of credit when it is addressed to all persons in general requesting such advance to a third, and a special letter of credit when addressed to a particular person by name.''

That author points out (Sec. 1792) that letters of credit have been in use for many centuries among merchants, quoting from Hallam's Middle Ages to the effect that general letters of credit, not directed to anyone, were not uncommon in the Levant, even as early as the year 1200, and that orders to pay money to a particular person were introduced by the Jews about A. D. 1183.

The sum of the matter is that letters of credit are instruments long and well known to commercial law and mercantile usage. Such a letter is not subject to loose definition. *Contra*, it has a technical and specific one, fills a well-known office in effecting exchange, and, while no set form of words may be necessary, yet a letter of credit as known to the law must contain the essential elements pointed out in the definitions quoted. It must fill the office of a request (general or special) to pay the bearer or person named money or sell him some commodity on credit or give him something of value and look to the drawer of the letter for recompense, and it partakes of the nature of a negotiable instrument. Obviously, the letter in hand, as its face reads, is in no thinkable sense one of that sort; *ergo,* it is not a letter of credit, and to speak of it as such is inexact. If the letter was a ''letter of credit'' it would support an action *ex contractu.*

(2). Was the letter one of commercial recommendation on which an action for fraud and deceit would lie against the bank because of false representations therein made?

In construing the letter, a court is not at liberty, in order to fasten liability, to add or take away words, thereby altering the sense and either enlarging or cramping the assurance given in the instrument. [Weil v. Schwartz, 21 Mo. App. l. c. 380-381.]

A cardinal rule of interpretation is that words not technical are taken in their ordinary and usual acceptance. Now, the letter says nothing in direct terms about the *solvency* or *insolvency* of Levy or the Investment Company. The petition alleges that the statements in the letter, viz., that they were "valued customers" of the bank; that "their business" had always been "very satisfactory to us," and that "we consider them wide-awake business men," were each and all false and known by the bank to be false. It alleges that plaintiff relied on *those* statements as true and on the faith of that reliance parted with his money. It is not alleged, otherwise than by indirection, as above, that plaintiff relied on the *solvency* of Levy or the Investment Company. Such allegation, if made at all, must be *felt out* by way of inference.

Recurring to the letter, it says it will be presented by Levy in the "interest" of the Investment Company. The business of that company (its "interest") does not appear. Whether it was on the market as a buyer or a seller, a borrower or an investor, is dark—neither the letter nor the petition giving out any light. The drift of the letter agrees as well with the idea that the company (as its name points) was seeking investments as with the idea that it wanted to establish for itself a commercial credit as a borrower. If we turn to Levy, the same situation confronts us. Indeed, the face of the letter is more consonant with the idea that between the two (the company and Levy), they had something to sell and were seeking persons able and willing to buy. But plaintiff does not allege he bought aught from either. If the company was hawking its own stock or securities on the market through Levy as

a promoter or agent, as may very well be, then a purchaser would be interested in knowing whether Levy was honest and truthful, or a sharper living by his wit, and whether the company was doing a straight or crooked business. But this petition fights shy of that issue of fact. Plaintiff was no purchaser. He says he *loaned* Levy many thousand dollars in cash on the strength of defendant's letter, and lays stress in his petition, not upon honesty, but upon the fact that both Levy and the company were insolvent, that the bank knew that fact when it issued the letter, and made false representations as to their being "valued customers" and having a "satisfactory" relation with the bank as "wide-awake business men." The letter is more remarkable in what it does not say than in what it does say. Either by accident or design it, as said, omits a direct statement of solvency. However, a representation may mean solvency without using the word. If a banker certifies that A is a valued customer of his bank, does that not mean that he is either a valued depositor or a valued borrower? If "valued" as a depositor, does that not at least smack of solvency? If "valued" as a borrower, can a borrower be valued by a bank without the wherewithal to pay? Can the business of "valued customers," such as "wide-awake business men," be "satisfactory" to a bank unless the business men are so wide awake as to conduct their business on sound principles, steering clear of bankruptcy? We look on the letter as a roundabout statement of some financial responsibility and solvency. But all that does not touch the very heart of the matter as with the point of a needle. The studied and extraordinary vagueness of the letter remains to be further considered. That vagueness indelibly stamps it on its face as an unstable and insufficient foundation for commercial credit as a borrower of money. There is no hint given by the writer of the extent or line of credit, if any, that should be given the bearer. It invites no

loan at all, let alone one of the amount here. It is an unheard of and preposterous affair that a man would loan a stranger $12,750 in due course of business, without any usual preliminary inquiry or security exacted, merely on his faith in the borrower's financial credit suggested by proof so shadowy and inconsequential as the letter in hand. In other words, reliance and faith upon the borrower's ability to repay so large a loan could not in reason spring as a natural and fair conclusion from a letter couched in the terms of this one. A commercial recommendation taken as the foundation of credit and financial standing, in the sense of ability to repay borrowed money, should have the virtue of being a direct, plain and reasonably sufficient statement of the borrower's financial condition. In very olden times the half-gods presiding in certain heathen oracles gave out assurances premeditatedly uncertain and double. But those assurances were possibly intended to confuse men, play pranks with them and make ducks and drakes of their affairs. When acted on, they not unusually ended in mischief. The business affairs of modern life are not carried on, nor are the credit and standing of borrowers established, by recommendations as vague as those exploded oracular assurances.

In Blake v. Meadows, 225 Mo. l. c. 30, et seq., this court held in judgment certain vague and indefinite reports of commercial agencies, ruling they were not to be received as a basis of credit, and this because of their very uncertainty and vagueness.

Moreover, the last line of the letter has to be reckoned with, viz., "Any favors shown to him will be highly appreciated." What do "favors" mean? Does the word mean courtesy extended? Does it import information given? Does it bespeak introductions to men likely to deal with the Investment Company or with Levy? Or does it invite loans of money? The latter is the most farfetched and unlikely of all. If

the word was selected for the identical purpose of being indefinite and meaning something or nothing of pith, the person selecting it thereby furnishes no little evidence of his being a past-master in the art of foggy writing. Again, the last words of the letter are that said favors will be "highly appreciated." Highly appreciated by whom? By the public? By Levy? Or by the writer of the letter? Does "appreciated" mean the favors will be repaid? Hardly. But if so, how? By thanks? By gratitude? Or by cash?

We are cited to cases holding that false representations in a letter issued to evidence the financial credit of the bearer or person named, when the representations are knowingly made, or made so recklessly as to spell fraud, support actions for fraud and deceit. [Dunn v. White, 63 Mo. 181; Dulaney v. Rogers, 64 Mo. 201; Weil v. Schwartz, 21 Mo. App. supra; Felix and Marston v. Shirey, 60 Mo. App. 621.] But in those cases the representations were direct commercial recommendations, intended to establish the credit of a purchaser or borrower.

To sum up, there must be such natural connection between a letter of commendation and the acts complained of that the one may be seen to bear the relation of a proximate cause to the other. It is elementary that to be actionable an injury must be a natural sequence of the wrongful act. Here, the specific damage is not the reasonable result of the letter. True, one followed the other. But merely because the letter preceded the injury and the injury followed hard on the heels of the letter does not establish the relation of cause and effect. *Post hoc, ergo propter hoc* must be weighed carefully, for it may be fallacious reasoning. Tuesday follows Monday and night follows day, but Monday did not *cause* Tuesday, or day, night. We cannot look on the letter as the procuring cause of Levy's financial credit as a borrower. The reasonable

object of that letter fell far short of a loan. Its force is naturally spent in other ways.

(d). There is another fatal infirmity. Our Statute of Frauds and Perjuries (R. S. 1909, sec. 2785) ordains that: "No action shall be brought to charge any person upon or by reason of any representation or assurance made concerning the character, conduct, credit, ability, trade or dealings of any other person, unless such representation or assurance be made in writing, *and subscribed by the party to be charged thereby, or by some person thereunto by him lawfully authorized.*"

That section requires the "assurance" to be in writing, and, more to the point, to be "subscribed by the party to be charged thereby, or by some person thereunto by him lawfully authorized." This letter was signed by "W. H. Seeger, 2 V. Pres." It does not purport to be signed by the bank. But assuming it was issued on the bank's letter paper and that its phraseology is designedly couched so as to convey the impression it was the act of the bank through "W. H. Seeger, 2 V. Pres." then there is a fatal omission in the petition. It does not allege that Seeger as 2d vice-president had proper authority, in the name of the bank, to make the assurance contained in the letter. His authority in that behalf under that statute is an issue of fact and must be tendered. In Knight v. Rawlings, 205 Mo. 412, Division Two, and in McKee v. Rudd, 222 Mo. 344, Division One of this court construed that statute. They discuss the necessity for a written as contradistinguished from an oral representation as a basis for liability for false representations on the financial ability of third persons. Those cases do not hold in judgment the question of the authority of the person who signed the letter in a representative capacity to bind his principal, but they deal with the statute and make clear the necessity of obeying it in order to recover. If this petition

had alleged that the bank issued the letter and had stopped with that without showing how it was issued and by whom signed, this phase of the matter might not arise on demurrer but become an issue of fact to be raised by an answer. But this petition counts on the whole letter, signature and all. From that it appears that Seeger, "V. Pres.," issued it. There is no rule of law known to me requiring a court to take judicial notice that the duties of a 2d vice-president of a bank are of a sort permitting him to bind the bank and cast liability on it by false statements made in letters of recommendation. If he had such authority, it was matter of allegation and proof.

(e). Finally it urged that a national bank cannot be financially bound or obligated by papers of the character sued on; that the matter is *ultra vires*. On this point reliance is put on Commercial National Bank v. Pirie, 82 Fed. 799. In that case it was held that the guaranty of a national bank whereby it obligated itself to pay for any bill of goods one Webb might buy of certain dealers in Chicago was *ultra vires*. But on our record the proposition opens an unprofitable field of exploration, for the case breaks before the point is reached. When we have a case hinging only on the point that a bank cannot be mulcted in damages and its welfare as a going concern put to hazard because of a false representation made concerning a matter wholly disconnected from its own affairs and wholly concerning a third party, we can deal with it. The point is reserved.

In view of all the premises, the demurrer was well ruled. Therefore, the judgment should be affirmed. It is so ordered. All concur, except *Valliant, J.*, absent.