A. H. MARSHALL, Appellant, v. ALFE BROWN, Respondent.

Springfield Court of Appeals, August 10, 1920.

1. **WITNESSES:** Cross-examination of Physician Held Error In physician's action for services rendered defendant's employee, involving issue of whether defendant had agreed to pay physician, where only evidence on such issue was the testimony of the parties, cross-examination of physician as to whether he had intended to quit treating employee before such contract was made *held* ground for reversal; questions having been asked for the purpose of prejudicing him in the eyes of the jury.

2. **PHYSICIANS AND SURGEONS:** Physician May Quit Case by Giving Proper Notice. A physician has the right to quit a case by giving the proper notice.

3. **WITNESSES:** Liberality Allowed in Examination. Much liberality is to be allowed in examining witnesses, but such examination must be for the purpose of getting the truth of the point examined.

Appeal from Circuit Court of Mississippi County.—*Hon. Frank Kelly,* Judge.

REVERSED AND REMANDED.

*Boone & Lee* and *R. L. Ward* for appellant.

Plaintiff was entitled to a new trial on account of newly discovered testimony. His application is supported by his own affidavit, clearly showing diligence, and by the affidavit of the witness, Stringer, which discloses that the newly discovered testimony, in a case as evenly bal-

anced as this was, would certainly produce a different result. The rule is: It the affidavit of the witness discloses facts which would, if true, probably produce a different verdict, a new trial should be granted. Meish v. Sippy, 132 Mo. App. 559; Howland v. Reeves, 25 Mo. App. 458.

*J. M. Haw* and *Gallivan & Finch* for respondent.

(1) But the action of the trial court in refusing to grant a new trial on the grounds of newly discovered evidence is not before this court for review because the motion for new trial did not set out the alleged newly discovered evidence, nor the name of the witness nor the allegation that due diligence had been used. It is necessary that the motion itself contain these things. To set them out in the affidavit is not sufficient. Lyons v. Railroad, 253 Mo. 161-163; Bowen v. Matlack, 188 S. W. 100; Winn v. Grier, 217 Mo. 461; King v. Gilson, 206 Mo. 277; State v. David, 159 Mo. 535; State v. Welsor, 117 Mo. 582. (2) The appellate court will not reverse a case unless they believe error materially affecting the merits of the case was committed. Sec. 2082, R. S. 1909; Lessenden v. Mo. Pac. Ry. Co., 238 Mo. 247; Fink v. Kansas City So. Ry. Co., 161 Mo. App. 314; Shinn v. United Rys. Co., 248 Mo. 173; Read v. Mo. Pac. Ry. Co., 161 Mo. App. 522; Lower v. Marceline Coal & M. Co., 142 Mo. App. 351.

FARRINGTON, J.—This suit was begun in the justice of the peace court and appealed to the circuit court, there tried by a jury resulting in a verdict and judgment for defendant, from which plaintiff appeals. The cause of action was on an account for medical services. The plaintiff, a practicing physician, was called to treat one Charles Rowe, who lived about ten miles from plaintiff's office. He found Rowe in a serious condition, suffering from blood poisoning, and also found that another physician had been in the case. He told Rowe on the first treatment that unless he could secure him in a fee for his pay he could not continue the treatment, and

that he would donate that visit. Rowe had some money and told him to come on, that he thought he could get help so that his fee would be secured. Plaintiff treated Rowe, who recovered.

The case here depends entirely upon the testimony of plaintiff and defendant. Rowe, the sick man, lived on Brown's place, and the plaintiff testified positively that the defendant agreed to the following contract so far as pay for services was concerned: Plaintiff testified that Brown agreed to pay the full amount of his bill if Rowe recovered, but should Rowe die, then Brown would pay plaintiff only half of his fee for services. The defendant testified that the special contract was that he would pay the plaintiff one-half of his bill if Rowe died, and that in the event Rowe lived he would then pay him the full amount out of any wages coming from Brown to Rowe. As before stated, Rowe got well, quit working for Brown and left.

The point of dispute arises only as to what defendant was to pay in the event Rowe got well, and as no one was present except plaintiff and defendant when that contract was made, it all depends upon their testimony.

Appellant assigns two grounds for reversal, one of which is that over the objection and exception of the plaintiff the following evidence was brought out by defendant's attorney on cross-examination:

"Q. Rowe was badly in need of medical attention at the time you first visited him, was he not, and could not have lived very long in that condition without medical attention? A. Oh, he could have lived some time, yes.

"Q. Did not you testify in the trial before that he might possibly have lived two or three days without medical attention, but no longer? A. Yes, he could have lived two or three days.

"Q. Did you ask him how much money he had before you determined he was in such bad condition? A. I just looked at the limb and found another doctor had been in the case.

"Q. What did he tell you? A. I think he told me he had something like 35 or 40 dollars.

Marshall v. Brown.

"Q. What would have been the probable result had he not been able to obtain medical attention at the end of your fourth visit? A. If he hadn't have had attention, and went on, he would probably have died."

Exceptions were properly saved at the time to these questions.

"Q. Doctor, it was after the third or fourth treatment, I believe you stated, that you first saw Brown and had your conversation with him? A. Yes, sir; it was after that.

"Q. And at that time you say the patient was in a critical condition? A. Yes, sir.

"Q. Funds were being raised in the neighborhood by subscription? A. Funds were being raised.

"Q. For the support of the family and to buy bandage and gauze? A. Well, that was not right then; several days before they begun to make up money; I told them I ought to have about ten dollars for the gauze furnished before Alfe was to make the bill good.

"Q. At least, the man was in bad shape and the people were raising funds for him? A. Yes, sir.

"Q. I want you to tell the jury whether or not with the conditions as you found them there, you intended to quit that case if Brown hadn't made any such promise?

"Mr. Ward: I object to that for the reason that is a suit on a contract and it can't be changed by some prior intention of somebody, and for the further reason this man has given the facts in the case and he said he made these different visits because it was promised from the very time he started in that this man would pay this bill or it would be secured.

"By the Court: Court will let him answer.

"To which ruling of the court plaintiff objected and excepted at the time, and still objects and excepts.

"Mr. Ward: We except.

"A. That was the understanding when I first started, that Alfe was going to make it good.

"Q. After you made those treatments and received pay for it and the man was still desperately sick, I will ask whether or not you would have left him in that con-

dition without medical attention and refused to treat him further? A. Yes, sir; because that's what he agreed to do at the beginning and another doctor was in the case.''

The questions set out calling for the intention as to whether or not he would quit treating Rowe before this contract was made are incompetent for any purpose. He had a right to quit the case by giving the proper notice. [30 Cyc., sub-sec., 9, page 1573.] The questions were clearly asked for the purpose of discrediting and prejudicing the plaintiff in the eyes of the jury. Such testimony might not amount to reversible error in a case where the determination of the issue did not depend solely upon the testimony of the plaintiff and defendant, and outside of the testimony set out there is nothing in the case to discredit either party.

The two cases cited, Ayers v. Railroad, 190 Mo. 228, l. c. 235, 88 S. W. 608, and Harris v. Railroad, 115 Mo. App. l. c. 532, 91 S. W. 1010, do not deal with the question here on cross-examination. Those cases are discussing the two rules which prevail concerning the manner in which a party may use the testimony of the witness of the adverse party, while in our case the question to be determined is whether the admission of incompetent testimony which tends to discredit one of the parties is reversible error.

As is held in the case of Ephland v. Railroad, 57 Mo. App. 147, there is much liberality to be allowed in examining witnesses but it must be utilized for the purpose of getting the truth of the point examined.

Whether Dr. Marshall intended to quit the case, as the law provides he may do by exercising the proper care, in no way tended to prove whether or not he had the contract with the defendant that he was testifying to.

The case also discloses that there was one witness who had been undiscovered by the plaintiff whose evidence strongly tended to establish plaintiff's case.

The view we have taken as to competency of the testimony brought out on cross-examination makes it

unnecessary to discuss the action of the trial court in refusing to grant a new trial because of newly discovered evidence.

The judgment will be reversed and the cause remanded for a new trial.

*Sturgis, P. J.,* and *Bradley, J.,* concur.