THE STATE EX REL. AMERICAN SCHOOL OF OSTEOPATHY v. CHARLES U. DAUES ET AL., Judges of St. Louis Court of Appeals.—18 S. W. (2d) 487.

Division One, May 18, 1929.

992

*Higbee & Mills* and *S. H. Ellison* for relator.

*C. D. Stewart* and *G. C. Weatherby* for respondent.

994

GANTT, J.—Relator seeks to have quashed the opinion of the St. Louis Court of Appeals in Noren v. American School of Osteopathy, a corporation, No. 19495.

The facts as stated by said court are:

"This is an action for damages for personal injuries, alleged to have been sustained by plaintiff, while receiving certain osteopathic treatments at the hands of one Elmer C. Abramson, a senior student of defendant, American School of Osteopathy, an institution located in the city of Kirksville, Missouri, and engaged in the business of teaching and practicing the science of osteopathy. A trial was had to a jury, resulting in a verdict for plaintiff in the sum of $3500. In due course, a motion for a new trial, filed by defendant, was sustained by the court, upon the ground of error in the giving and refusal of certain instructions, from which order plaintiff perfected his appeal. . . .

"It was alleged in the petition, in substance, that, as a prerequisite to graduation from defendant school, Abramson, as agent and servant of defendant, was required to give a certain number of osteopathic treatments to members of the general public, under the direction and supervision of defendant; and that, while so treating plaintiff, Abramson, unskillfully, carelessly and negligently injured him.

"The answer was a general denial.

"The evidence disclosed that plaintiff became acquainted with Abramson in the fall of 1921, while the latter was engaged in giving osteopathic treatments to certain members of plaintiff's family. Plaintiff was aware that Abramson was not a graduate osteopathic physician, but that he was a student in defendant school, studying to qualify himself for the ultimate practice of his chosen profession. It appears that one of the requirements of the school leading to graduation was that each student, in his senior year, should administer two hundred treatments outside of the school, and an additional two hundred at the school's infirmary, to members of the general public. Such treatments were given under the direction of a member of defendant's faculty or staff, and were reported by the student to defendant on blanks supplied him for such purpose.

"Prior to Abramson's personal connection with the case, plaintiff had been examined at the school proper, and had been told at the time that he was suffering from lumbago, a progressive disease which first manifests itself in the lower part of the back, and gradually extends higher. For this examination he paid the school the sum of two dollars. Subsequently, during one of Abramson's visits to plaintiff's home, he sought permission from plaintiff to treat him, which request was granted. Four or five days later Abramson returned, in company with Dr. Platt, a member of defendant's faculty, and the director in charge of the treatments required to be given by the students; and, after an examination of plaintiff, conducted by both men, his ailment was again diagnosed as lumbago. After a conference with Abramson, Platt informed plaintiff that Abramson was competent to treat him, and the first treatment was, in fact, given by Abramson in Platt's immediate presence. Thereafter the treatments were administered at regular intervals by Abramson alone, until in March, 1922.

"The particular treatment complained of was given sometime in February, 1922. Upon such occasion, Abramson, after placing plaintiff upon the treating table, first manipulated his hips; and then, after taking hold of his head with both hands, twisted his head with such force as almost to throw plaintiff off of the table, causing his neck to crack with a loud noise, as a result of which plaintiff was caused to suffer very severe pain and permanent injuries.

"There was evidence that an adjustment of the neck was not necessarily a treatment for lumbago, although occasionally, when a specific affliction was being treated, general treatments, in addition to treatments of the particular area affected, were also given; that extreme pressure would be required to dislocate the neck, as happened in plaintiff's case; that, in adjusting the neck, the proper method was to place the operator's hands underneath and to the side of the neck, and not to place them under or upon the head, as Abramson did; and

that to apply such force as to move the patient's body upon the table, and to give the head such a severe turn or jerk as to dislocate the neck, was not proper osteopathic treatment.

"Dr. Platt himself testified to the fact that Abramson was required to give certain treatments to patients, who were to be examined by a member of the faculty of the school; and that it was the duty of such faculty member to instruct the student as to the nature of the ailment, and to outline the exact manner in which the case should be treated. He admitted having examined plaintiff, and having given Abramson specific directions as to the course of treatment to be pursued; but stated that after the first treatment had been administered, he was not supposed to see plaintiff again, unless the treatments did not give relief, or some other complaint was made.

"There was evidence offered on the part of the defendant bearing upon its theory of defense, which tended to show that Abramson had reported certain of his treatments; but that he had not reported the one in February, 1922, inasmuch as he had at that time completed the number of treatments required of him by defendant."

I. The court held there was substantial evidence of the relation of physician and patient between defendant and plaintiff. Relator challenges this ruling as in conflict with Laughlin v. Gorman, 239 S. W. 548 l. c. 550; Morrell v. Lawrence, 203 Mo. 363 l. c. 370, 101 S. W. 571; Carr v. Mo. Pac. Ry. Co., 195 Mo. 214, l. c. 225,  92 S. W. 874; Feebach v. Railroad, 167 Mo. 206, l. c. 215-216, 66 S. W. 965; Oatman v. Railway, 263 S. W. 139, l. c. 143-144; Liggett v. Bank, 233 Mo. 590, l. c. 601, 136 S. W. 299; McDonald v. Matney, 82 Mo. l. c. 365; Mining Co. v. Swope, 204 Mo. 48, l. c. 58, 102 S. W. 561. Relator directs attention to no conflict, and an examination of the cases discloses none. In those cases the question of agency is neither discussed nor decided.

The evidence tends to show relator conducted a college for profit, in which was taught the science of osteopathy; that it maintained a clinic in connection with the college; that its clinical activities included the treatment of patients by its students in and outside of its hospital; that on the request of one of its students the plaintiff consented to be treated by said student; that, after an examination by relator and the student, plaintiff's case was diagnosed, and the student assigned to treat him; that the relator assisted the student in giving plaintiff the first treatment, directed the student as to future treatments, and required him to report to relator, on blanks supplied for such purpose, his treatments of plaintiff.

On this review we are concerned only with conflicts. However, it will be interesting to note that under similar facts it was held by

the Supreme Court of Oklahoma, Carver Chiropractic College v. Armstrong, 103 Okla. l. c. 124 that:

"A corporation created for the purpose of maintaining and operating a school or college for gain or profit in which is taught the science of chiropractics, and maintains a clinic in connection with the college, wherein patients are treated by undergraduate students of the institution for a nominal charge, is liable for an injury sustained by a patient while being treated in the clinic by a student who has been assigned by the authorities of the institution to administer the treatment, where the injury complained of is the result of negligence, carelessness, or lack of ordinary skill on the part of the student administering the treatment.

"In that case, plaintiff, while undergoing the chiropractic treatment at the hands of the student practitioner, had two ribs broken, the breastbone dislocated, and her body otherwise bruised and torn. In affirming a judgment for the plaintiff against the corporation, the court said:

"A clinic, as an adjunct to a college of this character is a necessary and essential part of the institution, and is maintained, not for the benefit of charity, but for the benefit of the institution and its students, and the institution is a private corporation created for business purposes and for profit, and while those who practice and believe in the science may feel that it is an institution in the nature of a public beneficiary and should be regarded in the same light as charitable institutions, the law does not so consider it, and in our judgment the institution is clearly liable for any negligence or [lack of] ordinary care on the part of its servants, employees, and students, who are placed in charge of persons entering the institution for treatment." [Carver Chiropractic College v. Armstrong, 103 Okla. 123, 229 Pac. 641.]

II. Relator challenges the ruling on plaintiff's Instruction No. 1, which follows:

"You are instructed in this case that if you find and believe from the evidence that the defendant conducted its school of osteopathy in the city of Kirksville, Missouri, during the two years of 1921 and 1922, and through its agents and servants taught and practiced the science and system of osteopathy in said school during said years and you further find that one Elmer C. Abramson was a senior student in defendant's school during the years 1921 and 1922 and that said school directed and required said Abramson to give two hundred osteopathy treatments to patients outside the rooms of defendant's school and under the supervision and direction of a member of the faculty of said defendant's school and you further find and believe from the evidence that

one Dr. Platt was a member of the faculty of said defendant's school and that said Platt examined the plaintiff and directed the said Abramson to treat plaintiff for lumbago and that said Abramson did thereafter under said directions of said Platt treat the plaintiff and while treating plaintiff negligently and carelessly produced a partial dislocation of one of the vertebraes in plaintiff's neck and by reason thereof injured plaintiff, then your verdict should be for the plaintiff."

In reviewing the instruction, the court said:

"So far as concerns plaintiff's Instruction No. 1, we are of the opinion that it was within the purview of the pleadings and the evidence, and that it properly covered the entire case. It did not assume any controverted facts, as counsel contend; and while it is true that it did not, in express terms, require the jury to find that the relation of physician and patient existed between plaintiff and defendant, or that Abramson was the agent of defendant, it did submit the facts upon a finding of which the law would say that such relationships did exist, with all of the attendant obligations. Nor can it be said that it failed to give the jury any guidance as to the specific act which, under the law, would constitute negligence, inasmuch as it plainly submitted the sole act pleaded and relied upon; namely, that Abramson had produced a partial dislocation of one of the vertebrae in plaintiff's neck."

It is contended this ruling is in conflict with Owens v. McCleary, 281 S. W. 682, in that the words "carelessness" and "negligence" are not defined.

We assume the question was not presented to the Court of Appeals, for said court did not rule on the question, and an examination of the opinion in the Owens case discloses that the question was not ruled in that case. Absent a tender of an instruction properly defining said words, it was not error for the court to fail to do so. [Russell v. Grocery Co., 288 S. W. l. c. 987, and cases cited; Anderson v. American Sash & Door Co., 182 S. W. l. c. 820; Duvall v. Cooperage Co., 275 S. W. l. c. 589; Malone v. Railway, 213 S. W. l. c. 867; Sweeney v. Railway, 150 Mo. 385 l. c. 401, 51 S. W. 682.]

The Owens case was an action for malpractice, and the instruction complained of did not inform the jury what specific acts or omissions would constitute negligence.

In the instant case plaintiff's Instruction No. 1 "submitted the sole act pleaded and relied upon, namely, that Abramson (the student) had produced a partial dislocation of one of the vertebrae in plaintiff's neck."

The partial dislocation of a patient's neck by an osteopathic treatment is so unusual where the treatment is given with ordinary care that a finding of negligence against a defendant in control of the treatment is warranted in the absence of an explanation.

In Ercholz v. Poe, 217 S. W. 282, the evidence tended to show that plaintiff's jawbone was broken by a dentist in extracting a tooth. In reviewing the case, we said:

"The proximate cause of the injury is established sufficiently by the testimony of plaintiff, who swears that his jaw was broken and fractured in the act of extracting the tooth, and in the light of the authorities, supra, we think the extraction of the tooth, being under the management and control of defendants, was sufficiently out of the ordinary course of that which usually happens where ordinary care and skill is employed, in the absence of explanation by defendants, to warrant the jury in finding that the tooth was negligently extracted."

It is next contended the opinion is in conflict with Moon v. Transit Co., 247 Mo. 227 l. c. 237, 152 S. W. 303; State ex rel. v. Trimble, 236 S. W. l. c. 653, for the reasons the instruction assumes controverted facts and fails to submit important issues. Those cases announce the rule that instructions must not be broader than the pleadings or the evidence and must require the jury to find every contested fact necessary to a recovery. The instruction assumes no controverted facts and requires a finding of facts which create a relationship of physician and patient.

III. It is next contended the opinion is in conflict with Liggett v. Bank, 233 Mo. 590, l. c. 601, 136 S. W. 299, and Pate v. Dumbauld, 250 S. W. l. c. 52, for the reason that plaintiff contracted for student treatment, and the court of appeals held that Abramson (the student) was required to use the skill of a physician.

There can be no conflict with those cases, for the reason the question was neither presented nor discussed. The evidence tends to show that plaintiff did not contract for student treatment; that he submitted himself as a subject for treatment in relator's clinic; that relator accepted him as its patient, assured him the student was qualified to treat him and directed the treatments given him.

In this connection it is contended that "the conclusion reached by respondents is reached by one presumption being based on another." Relator points to no violation of this rule, and we discover none.

IV. It is next contended the opinion is in conflict with Everhart v. Bryson, 244 Mo. 507, l. c. 516, 149 S. W. 307, for the reason the Court of Appeals held that defendant's refused instruction numbered 5 conceded agency.

That case holds a defendant does not waive a demurrer by asking instructions on the merits after the demurrer is refused. There is no conflict.

Instruction No. 5 is as follows,:

The court instructs the jury, that if you find and believe from the evidence in the cause that the witness Abramson had given all the treatments required by defendant school to be given prior to the giving by him of the treatment complained of by plaintiff, then your verdict must be for defendant.''

The court in reviewing the instruction said:

''With regard to defendant's Instruction 5, we assume that it was requested by reason of Abramson's testimony that he had completed the required two hundred treatments, before the injury to plaintiff's neck was inflicted. It would seem that, by the language of such instruction, defendant should be held to have conceded that so long as Abramson was engaged in giving the treatments demanded of him by defendant, he was acting as defendant's agent, and that during such time defendant would be answerable for his negligence. But aside from this, it is the undoubted rule that unless the terms of the employment of a physician limit the extent of his service, or a reasonable notice is given the patient that he will not undertake subsequent treatment, the relation of physician and patient continues until the doctor's services are no longer needed, unless ended by mutual consent, or revoked by dismissal. [Marshall v. Brown, 205 Mo. App. 390, 224 S. W. 13; Nash v. Royster, 189 N. C. 408, 127 S. W. 356; 30 Cyc. 1573.]''

Thus it appears the court did not hold that said instruction conceded agency.

It follows our writ should be quashed. It is so ordered.

All concur.