260 S.W.2d 569 (1953)
SIBERT
v.
BOGER.
No. 43193.
Supreme Court of Missouri, Division No. 2.
July 13, 1953.
Motion for Rehearing or to Transfer to Denied September 14, 1953.
*570 Russell Garnett, Warrensburg, for appellant.
John T. Martin, Sedalia (Martin & Gibson, Sedalia, of counsel), for respondent.
Motion for Rehearing or to Transfer to Court en Banc Denied September 14, 1953.
TIPTON, Judge.
This is a malpractice action against the respondent, a physician and surgeon. At the close of appellant's evidence, the trial court directed a verdict for respondent and rendered a judgment for him.
Appellant's petition alleges that on January 5, 1944, she engaged the services of respondent for treatment, examination, advice or surgery for injuries "resulting from an automobile accident which she had just undergone"; that the relationship of physician and patient between the parties continued until February 16, 1944; that during that period of time she was suffering from numerous injuries; and that respondent so negligently conducted himself in examining and caring for her that he failed and neglected to diagnose and prescribe proper treatment for her injuries. In regard to respondent's examination and diagnosis, her specific charge of negligence is that he neglected to have an X-ray taken of her alleged fractured bones. In regard to his treatment of her, the specific charge of negligence is that he failed "to prescribe proper splints, braces, casts or other supports for such injured members as she then had, or to have directed plaintiff (appellant) to remain abed, as he should have done under the conditions and circumstances."
Respondent's answer admits "that on or about the 5th day of January, 1944, the plaintiff came to the defendant's (respondent's) office to consult him with reference to injuries claimed to have been sustained by her in an automobile collision which occurred on the previous day and that he accepted plaintiff as a patient and did undertake to examine, treat and prescribe for her." His answer further alleged that this action is barred by the two-year statute of limitations and also because of a settlement negotiated with the other party involved in the automobile collision in which she received her alleged injuries.
Appellant testified that she was married and was a country schoolteacher, and that on January 4, 1944, while driving her automobile to her school, she was involved in a collision with an automobile driven by a man named Callis. Shortly thereafter, she drove her car from the scene of the collision to the schoolhouse where she remained for the day. She then drove her car back to town and took it to a garage. She testified first that she saw the respondent that day but later admitted that she did not go to see him until after her school was out the following day. She continued to teach in the school for ten days or two weeks after her accident without interruption. She then quit teaching.
Appellant testified on direct examination that she went to respondent "for anything that ailed me and there were a great many things that ailed me." She further testified on direct examination that he did not examine her "very much" and told her there was nothing wrong with her; that he told her to go back and teach school; that he gave her some drugs but did not advise having an X-ray taken, although she asked him to do so; and that he did not advise her to go to bed. However, on cross-examination she admitted that she did have an X-ray taken of her back at the Bothwell Hospital after either her first or second visit to respondent's *571 office; that the X-ray was in her possession at the trial, although she did not introduce it in evidence; and that she did not contend that this X-ray indicated any bone injury.
At the trial her principal complaints were injuries to her back, yet she made no such complaints to respondent during the period of the relationship of physician and patient. Her complaints of pain made to respondent involved her shoulder, the front part of her chest and her hip. The only external evidence of any injuries she had were black bruises on her hip and a small lump on her shoulder. In fact, her testimony as to her injuries is as follows:
"Q. Where did you tell him you were hurt? A. My shoulder, my chest.
"Q. Your shoulder and your chest? A. My back. I thought it was my chest, but it was my back."
The respondent had her remove her clothes and manually examined her chest, back, shoulder, arms and ribs. She complained of bleeding from the vagina and rectum. He examined her with regard to these complaints but stated he found no blood. On the second visit to his office respondent taped her left side. He also gave her medicine.
Appellant was told by respondent on February 16, 1944, that he could do nothing further for her and suggested that she go to someone else.
On November 2, 1945, appellant settled her claim for damages with Callis for $2,500. Previous to making this settlement, she submitted reports from several physicians who had examined her. One of these reports was made by respondent. A statement in that report was to the effect that he advised appellant to stay in bed as much as possible.
In ruling the question of whether the evidence made a submissible case for the jury, we must take as true every fact and circumstance which appellant's evidence tends to prove. She is entitled to the benefit of every reasonable inference which may fairly be drawn therefrom and, of course, the evidence must be considered in the light most favorable to her. See Missouri Digest, Trial.,
A physician who undertakes the treatment of a patient is required to possess and exercise that degree of skill and learning ordinarily possessed and exercised by members of his profession in good standing in the same or similar localities. Owens v. McCleary, 313 Mo. 213, 281 S.W. 682; Trask v. Dunnigan, Mo.App., 299 S. W. 116; Persten v. Chesney, Mo.App., 212 S.W.2d 469. In other words, the law requires that a physician or surgeon who undertakes to treat a patient possess that degree of skill and learning which is ordinarily possessed and exercised by members of his profession in good standing who practice in the same or similar localities; that he use reasonable care and diligence in the exercise of his skill and the application of his learning; and that he act according to his best judgment. The mere fact that a physician makes an incorrect diagnosis is no basis for a malpractice action. The patient has the burden of proof to show that the diagnosis was incorrect and also, that the incorrect diagnosis was the result of the physician's negligence. Owens v. McCleary, supra.
The appellant is bound by the allegations in her petition. In it she alleged that she went to respondent for examination, advice and treatment for injuries resulting from an automobile collision. It follows, therefore, that appellant did not consult respondent for disease but only for injuries and results of such injuries. Did respondent give heed to the symptoms present when he examined appellant, and did he make such an examination of her as her symptoms would indicate should be made and prescribe such method of treatment as a physician of ordinary skill and learning would have done under the same circumstances? If he did, he was not negligent. Lewis v. McClellan, Mo.App., 1 S.W.2d 247. When appellant went to see the respondent she complained of pains in her shoulder, in the front portion of her chest and in her hip. The only visible signs of injury were bruises on the back of her hip *572 and a small bump on her shoulder. She did not complain of injuries to her back as she did at the trial of this case, so it is understandable that respondent did not have an X-ray taken of her back. Nor is there the slightest proof that there were any visible signs of injury to her back or vertebrae. There is no proof that under these circumstances a physician of ordinary skill in that locality would have taken an X-ray to have discovered any fracture of her spine.
It is true that appellant's cousin, Dr. Gus Salley, took several X-rays of appellant over a four-month period of time, commencing in February, 1944. This would not show any negligence on the part of respondent. In the first place, the respondent would not be liable even if he did make a mistaken diagnosis because there is no evidence of any negligence on his part in making his diagnosis. Trask v. Dunnigan, supra. Moreover, a witness for appellant, Dr. Earl Laughlin, testified that in February, 1946, he gave her a general examination in a hospital in Kirksville. He testified that the most a physician could hope for in treating a fracture of any bone in the body is to have the bone heal in normal and proper alignment and "if you get a good anatomical alignment in healing, your treatment has been good." He also testified:
"Q. Did you find in this examination from the X-rays taken of Mrs. Sibert any indication of any bone disclosed by those X-rays being out of alignment? A. No, sir."
Testimony of the appellant's witness, Dr. Max Goldman, was similar to that of Dr. Laughlin's in reference to treatment of fractures. Dr. Goldman also testified that in treating a fracture of a vertebra a cast is generally used, provided the fracture is extensive. He further testified that he treated appellant for a bladder condition for which it was necessary to operate; that this condition was caused from an infection in the urinary tract and he refused to say it was the result of a trauma; and that a cystoscopic examination should not be undertaken by general practitioners.
Without detailing any more of the evidence in this record, it is sufficient to say that there is not the slightest evidence that respondent did not employ the same methods followed and approved by physicians of his school of medicine in good standing in the locality where he practiced his profession. Therefore, he could not have been negligent in examining or treating the appellant.
Appellant contends that respondent was negligent in refusing to prescribe treatment for her and thereby prolonged and aggravated her injuries, and that for this reason the trial court erred in sustaining respondent's motion to dismiss. In support of this contention she cites Reed v. Laughlin, 332 Mo. 424, 58 S.W.2d 440; and Baird v. National Health Foundation, 235 Mo.App. 594, 144 S.W.2d 850. These cases hold that a physician who negligently treats a patient is liable in damages if such negligence prolongs a patient's suffering. We have already held that there is no evidence of negligence on the part of respondent while the relationship of physician and patient existed between them.
The law is well settled that when the relationship of physician and patient is established, that relationship continues until ended by the mutual consent of the parties, the physician's withdrawal after reasonable notice, the dismissal of the physician by the patient or the cessation of the necessity which gave rise to the relationship. Reed v. Laughlin, supra; Baird v. National Health Foundation, supra; State ex rel. American School of Osteopathy v. Daues, 322 Mo. 991, 18 S.W.2d 487. It is true respondent told appellant on February 16, 1944, to go to another physician, but the evidence shows that she was already consulting another physician in the same town during the time she was under the care of respondent. She, therefore, was not abandoned without medical care. Moreover, in a city as large as Sedalia, medical service could have been obtained any day. At least, there is no evidence to the contrary.
From what we have said, it follows that the judgment of the trial court should be affirmed. It is so ordered.
All concur.