Krutza, by guardian *ad litem*, Respondent, vs. Milwau-
   kee Billiard & Bowling Club Company, Appel-
   lant.

*November 7, 1927—February 7, 1928.*

*Negligence: Injuries received in beauty parlor: Damages: Scalp
burns and scars.*

1. In an action by a young woman student in a beauty parlor to
   recover for injuries sustained while her hair was being
   treated by the use of a drier operated by an electric motor,
   answers of the jury that due to the failure of the defendant to
   inspect and clean the drier particles of dust had accumulated
   in the funnel, and, being combustible, took fire and ignited
   celluloid combs affixed in plaintiff's hair, are *held* sustained by
   the evidence.  p. 10.
2. Plaintiff suffered from the burns and a subsequent infection
   for a few months, but the pain was not excessive, and the
   rather large scar which remained is not very noticeable if the
   hair be combed back.  *Held,* that an award of damages of
   $5,000 is excessive, and unless plaintiff accepts a judgment in
   the sum of $3,000 a new trial is granted.  p. 10.

Appeal from a judgment of the circuit court for Mil-
waukee county: Gustave G. Gehrz, Circuit Judge.  *Re-
versed, with directions.*

This is an appeal from a judgment in favor of the plaint-
iff for $5,000 damages and costs.

The plaintiff alleged in substance that she was a tuition
student learning the profession of beauty specialist in a
school for that purpose conducted by the defendant; that
as such student, under the instruction and direction of the
defendant, she was receiving a marcel water wave in her
hair; that the method employed was to wet the hair and place
therein in various forms a large number of celluloid combs,
and then apply heat and air to the hair by means of a
machine operated by an electric motor, the machine being
fully described; that while her hair was thus being treated

it was set on fire through the negligence of the defendant, and her head and scalp were burned, causing great suffering and permanent injuries. The answer in substance admitted defendant's conduct of the beauty parlor; denied that plaintiff was authorized to have her hair treated; that she had her hair treated without authority and at her own risk, and that her injuries were received because of her own negligence. The case was tried before a jury, and the jury, in a special verdict, found: That one Gertrude Mohr was assistant manager of defendant's business at the time of the injury; that the making of the water wave for plaintiff was undertaken with the knowledge and consent of Gertrude Mohr as such assistant manager; that prior to plaintiff's injury combustible dust had so accumulated in the funnel of the drier to the extent that particles of dust were liable to become ignited and be emitted, when burning, from the mouth of the drier; that the fire which burned plaintiff was caused by burning particles of dust emitted from the mouth of the drier; that the defendant failed to exercise ordinary care in the inspection and cleaning of the drier before the fire, to prevent the emission of burning particles of dust; that such failure to use ordinary care was the proximate cause of plaintiff's injury; that there was no want of ordinary care on the part of the plaintiff proximately contributing to produce her injury; and assessing plaintiff's damages at $5,000.

The usual motions were made to set aside the verdict, to change the answers to the questions and enter judgment for the defendant, or for a new trial.

On this appeal the defendant assigns as errors: The court erred in refusing to direct a verdict for the defendant; in refusing to change the answers of the special verdict; in refusing to set aside the verdict and to grant a new trial; and in failing to reduce the damages.

For the appellant there was a brief by *Michael Levin* and *H. A. Kovenock,* both of Milwaukee, and oral argument by *Mr. Levin.*

For the respondent there was a brief by *Rubin, Zabel & Rouiller*; and oral argument by *Carney Nelligan,* all of Milwaukee.

The following opinion was filed December 6, 1927:

CROWNHART, J.   The plaintiff was a student, learning the profession of beauty specialist in a tuition school conducted by the defendant.   It appears from the evidence that the students were used in demonstration of the arts of hairdressing.   On the day in question the plaintiff desired a water wave produced in her hair, and at the noon hour another student, in the presence of Mrs. Mohr, who the jury found on sufficient evidence to be the assistant manager, arranged the combs in plaintiff's hair and started in operation the machine known as the drier, with the plaintiff in position to receive on her head the hot current of air from the machine.

The machine consisted of a 1/20 horse-power electric motor; in front of the motor was a wire mesh screen; in front of the screen was a revolving fan; in front of the fan was a reflector with the convex side toward the motor; surrounding the reflector was an electric heat wire coil, and in front of the reflector an electric lamp bulb.   All in front of the motor was surrounded by a nickel cone, larger at the motor end and smaller at the opposite end.   The cone concentrated the air produced by the fan, the heat produced by the electric wire coil, and the heat and light produced by the electric bulb, so that the heat, light, and air were directed on the head of the plaintiff.   While plaintiff sat in front of the drier the combs caught fire and burned her hair and scalp.

The main question litigated was how the fire was produced.   The plaintiff contends that the machine had become incumbered on the inside with inflammable dust, and that a spark was thus produced by the apparatus and carried to the combs.   It seems that this could have easily happened.

The fan sucked in through the screen the dust and lint that would naturally be in the air from the use of towels and other operations in the beauty parlor, and such dust and inflammable material would naturally become congested on the wire screen in front of the fan. As this dust from time to time would accumulate and become loosened from the screen it would be carried directly over the electric wire coil and some of it lodged thereon. The coil was sufficiently hot to set this dust and other particles on fire, and thus the fire could be carried directly to the head of the plaintiff; or, if sufficient dust had accumulated in the cone, it might cause an explosion within the cone. At any rate, we have the outstanding fact that the combs were set on fire in some way through the operation of the machine. The machine was used at the trial as an exhibit before the jury, and there was a demonstration by the defendant before the jury of the burning qualities of the combs. There is a sharp dispute in the evidence as to whether the machine had been cleaned from time to time. There was testimony to the effect that it had not been cleaned for eighteen months, and other testimony that it was cleaned once a week. But it appears that when the machine was brought into court, the wire screen was very dirty, and that at the defendant's request the machine was returned during the trial to the beauty parlor for use, and when brought back into court it had been thoroughly cleaned. The jury had the benefit of seeing the machine and the demonstrations made before it, and the trial court likewise had the opportunity of examining the machine and seeing the demonstrations.

This is a case where we must give consideration to such facts as appeared before the court and jury as were ocular evidence, difficult to place in the record. The trial court, on motions after the verdict, in his opinion said:

"I am satisfied, as was the jury, that defendant failed to inspect and clean the drier for approximately eighteen months before the fire to prevent the emission of burning particles

of dust from its mouth.  It is highly probable that such particles of dust and dirt were constantly drawn through the screen, and whirled around within the funnel or drum before leaving its mouth, by the action of the fan.  A device of the type of this drier, so neglected, aimed directly at a human head covered by some fifteen celluloid combs, obviously must be deemed not so free from danger to the life and safety of one situated as was the plaintiff, as the nature of any such employment would reasonably permit.  The claim made at a later stage of the trial by one of the defendant's employees not connected with the school, that the machine had been cleaned weekly with regularity, was properly rejected by the jury, as it now is by the court, as unworthy of credence.  The previous testimony of Marion Harland, the head of the school, that the interior of the funnel, or drum, of the drier had not been inspected or cleaned for some eighteen months before the fire is more consistent with the actual probabilities.  The contradictory later claim tends, however, to establish the fact that weekly inspections and cleanings would have been necessary in the exercise of due care.

"In this connection the court has in mind the combustible character of the plainly noticeable accumulation of mouldy dirt or rubbish which filled part of the meshes of the screen during the earlier stage of the trial and before the same was carefully cleaned away by defendant's employee after the court, upon suspension of the trial on Friday, had granted defendant's urgent request to be permitted to use the drier on Saturday.  It should also be observed that this occurred after the court had interrogated the witness, Harris, as to this accumulation.  If there ever was any doubt in any mind. as to the highly combustible character of the type of combs that were used, such doubt was most effectively dispelled by the demonstration made in open court by defendant's counsel.  The comb used was small.  A burning match was touched to it.  Instantly, a long, red flame shot upward. Nothing remained of the comb after very few seconds.

"The facts briefly mentioned, besides other evidence which need not be here reviewed, adequately supported every finding of fact contained in the verdict.  No good reason exists for disturbing any of the answers made by the jury.  They present a very plain case of actionable negligence and self-evident causation."

We conclude that the evidence presented questions for the jury, and that the jury's verdict cannot be disturbed except as to the amount of damages.

The defendant contends that the damages are excessive. The burn left a scar on the back and top of the head, where no hair remained, which condition will be permanent. The scar is described as one and three-fourths inches on one side, three inches on the other side, and two inches across. By combing the hair directly back the scar may be largely covered so as not to be very noticeable. The plaintiff suffered from the burn and subsequent infection for a period of a few months. The resulting pain from the injuries evidently was not excessive. The humiliation to the plaintiff during her lifetime and the lessening of her prospects in life make up the larger portion of the damages. In a matter of this kind it is very difficult, either for the jury or for the court, to ascertain with any degree of exactness the amount of damages. As was said in *Wasicek v. M. Carpenter B. Co.* 179 Wis. 274, 278, 191 N. W. 503:

"There is no accurate scale by which either court or jury can determine damages for pain and suffering. They must, however, exercise their judgment and discretion. We have before us many cases where juries have passed upon damages for pain and suffering. By considering these and the circumstances of each, we may get a fairly balanced average."

It is much more difficult to measure in money the suffering from humiliation. Most people become reconciled to disfiguration, as they should, and do not suffer greatly from such as here.

This court is impelled to the conclusion that the verdict in this case is excessive, and in our judgment it should be reduced to $3,000. The plaintiff will therefore be permitted to file with the clerk of the circuit court, within ten days after the filing of the *remittitur,* a consent to allow entry of judgment for the amount of damages suggested in the opinion.

*By the Court.*—The judgment of the circuit court is reversed, and a new trial granted on the question of damages only, unless the plaintiff shall, within ten days of the filing of the *remittitur* with the clerk of the circuit court, elect to allow entry of judgment for the amount of damages suggested in the opinion.

A motion for a rehearing was denied, with $25 costs, on February 7, 1928.