HEIN, Plaintiff and Respondent, vs. WENDLANDT, Defendant, Cross-complainant, and Appellant, and HEIN, Interpleaded Defendant and Respondent.

*January 14—February 9, 1932.*

For the appellant there was a brief by *W. H. Stafford* and *Harold E. Stafford,* both of Chippewa Falls, attorneys, and *Roy P. Wilcox* of Eau Claire of counsel, and oral argument by *Mr. Harold E. Stafford* and *Mr. Wilcox.*

For the respondent Hazel Hein there was a brief by *Alexander Wiley* and *Robert L. Wiley,* both of Chippewa Falls, and oral argument by *Alexander Wiley.*

*W. T. Doar* of New Richmond, for the defendant M. N. Hein.

OWEN, J. On the 19th day of August, 1928, the plaintiff sustained injuries as the result of an automobile accident when the car in which she was then riding and being driven by her husband, the defendant M. N. Hein, collided with a car being driven by the defendant Herman Wendlandt, at the intersection of state trunk highway 40 with county trunk M in Chippewa county. She and her husband were proceeding north on state trunk highway 40 and the defendant Wendlandt was driving east on county trunk M. The jury found that the defendant Herman Wendlandt was negligent in that he drove at an excessive rate of speed, failed to keep a proper lookout, and failed to yield the right of way, which

negligence constituted proximate cause of plaintiff's injuries. It exonerated the defendant M. N. Hein, as well as the plaintiff, of any negligence. The plaintiff's damages were assessed at the sum of $6,000, for which amount, together with costs, judgment went against the defendant Wendlandt.

Upon this appeal it is not contended seriously, if at all, that the evidence does not support the finding of negligence on the part of the defendant Wendlandt. Appellant's contention is that the evidence convicts the defendant Hein of negligence as a matter of law. The contention in this behalf is based on the fact that an embankment at the southwest corner of the two highways obstructed the view so as to make applicable the provisions of sec. 85.08 (2) (b) 2, Stats. 1927. This statute makes it *prima facie* lawful to operate an automobile at a speed of "fifteen miles an hour when approaching within fifty feet and in traversing an intersection of highways when the driver's view is obstructed." According to defendant Hein's own testimony, he approached this intersection, within fifty feet thereof, at a speed of thirty miles an hour. The statute does not make this an unlawful rate of speed. It simply makes a speed of fifteen miles an hour or less *prima facie* lawful. It does not make the speed in excess of fifteen miles an hour *prima facie* unlawful. *Hamus v. Weber,* 199 Wis. 320, 226 N. W. 392. It therefore cannot be held as a matter of law that Hein violated the statute in proceeding at a speed of thirty miles an hour within fifty feet of the intersection. Whether his speed was unlawful depended upon all of the facts and circumstances and was a jury question. It is conceded that there is an embankment at the southwest corner of the intersection which interferes to some extent with the view which one traveling north on state highway 40 has of traffic coming from the west on county trunk M, and likewise interferes with the view which one proceeding east on county trunk M may have of traffic going north on state highway 40. How-

ever, Hein's testimony is to the effect that when he was fifty feet south of the intersection he could see Wendlandt coming from the west ninety or one hundred feet from the intersection. While he did not have a full view of the car, he saw the top of the car, and knew of its presence. He could not immediately judge the rate of speed at which the car was coming, and did not realize until he was ten feet south of the intersection that it was coming at a high rate of speed. Upon discovery of this fact he said to his wife, "he is going to hit us," and immediately applied his brakes, but was unable to stop his car in time to avoid a collision.

We have, then, a situation where the Hein car was approaching this intersection at a rate of speed of thirty miles per hour within fifty feet thereof. He knew of the approach of the Wendlandt car, which was from ninety to one hundred feet from the intersection when he was fifty feet therefrom. If the two cars were traveling at the same rate of speed, Hein would have reached the intersection first, and cleared it well ahead of the Wendlandt car. This would also have been true if the Wendlandt car was approaching at a much higher rate of speed. Hein did not appreciate the true rate of speed at which the Wendlandt car was approaching until he was ten feet from the intersection of the highways and about twenty-five feet from the intersection of the traveled tracks, when he applied his brakes and did everything within his power to avoid the collision. There is evidence from which the jury could find that Wendlandt maintained his high rate of speed apparently oblivious of the approach of the Hein car. The jury weighed these facts and circumstances, together with many others to which it seems unnecessary to advert, and exonerated the defendant Hein from all negligence. Upon motions after verdict the trial court refused to disturb this finding of the jury. It appears to us that the evidence presents a clear jury question,

and we discover no theory upon which it may be said that Hein was guilty of negligence as a matter of law.

Certain errors are assigned upon the instructions given by the court to the jury. The court charged the jury that "A person is negligent when, without intending to do any wrong, he does such an act or omits to take such a precaution that, under the circumstances present, he ought reasonably to foresee that some injury or damage might probably result from his conduct. He is in duty bound to foresee all such ·natural consequences of his conduct as an ordinarily prudent and intelligent person would ordinarily foresee under the then present circumstances." This charge was approved in *Hamus v. Weber*, 199 Wis. 320, 226 N. W. 392. It was thoroughly reconsidered in *Osborne v. Montgomery*, 203 Wis. 223, 234 N. W. 372, where it was said that such an instruction was deficient where the charge did not include a definition of ordinary care. The charge in the *Montgomery Case* was approved because that charge did include a definition of ordinary care together with a statement that negligence is a want of ordinary care. The charge in this case contained this statement:

"The statute of this state, as it existed at that time, prescribed certain duties which the drivers of automobiles should obey. And independent of the statute, it is the duty of drivers of automobiles to be careful in their driving. It is their duty not to be negligent. It is their duty to exercise ordinary care. Ordinary care means such care as persons of ordinary intelligence and prudence usually exercise under the same or similar circumstances. A failure to obey the provisions of the statute which requires a person to do certain things, is a failure to exercise ordinary care."

The only respect in which this portion of the charge does not parallel the charge approved in *Osborne v. Montgomery, supra,* is that it does not contain the direct statement that "negligence is a want of ordinary care." While we think

it would have been better, in view of the fact that the court told the jury it was the duty of the driver not to be negligent, to also tell them that "negligence is a want of ordinary care," that very thought is clearly to be inferred from the language used. In the first place, the court states affirmatively the duty of the driver of an automobile. It is his duty to exercise ordinary care as therein defined. That states affirmatively the standard of care which he is bound to exercise. If he does not exercise that care, then he fails to exercise ordinary care, and fails to exercise the care which the law imposes upon him. The common, ordinary understanding with which it must be assumed juries are endowed would infer from this statement alone that a failure to exercise ordinary care amounted to negligence. At least they would necessarily infer that by failing to exercise that care which the law imposed upon them they failed to discharge the duties which the law required of them. But the court in immediate apposition said: "It is their duty not to be negligent. It was their duty to exercise ordinary care." This was but the same truth stated conversely, and we would have scant respect for the intelligence of the jury if we did not assume that they so understood these two expressions. At least we cannot find that the jury did not so understand them, and that a different result would probably have obtained if the jury had been expressly told that "negligence is a want of ordinary care," which is necessary if this feature of the charge is to be held to constitute reversible error. While the direct statement made in the *Montgomery Case* is to be approved and encouraged, we cannot conclude that its omission constituted reversible error here.

Complaint is further made because it is claimed the court gave to the jury various standards of care which the respective drivers of automobiles were required to exercise: (1) the standard set up by the statute; (2) independent of

the statute it is the duty of drivers of automobiles to be careful in their driving; (3) it is their duty not to be negligent; and (4) it is their duty to exercise ordinary care. These statements were merely introductory to the general charge, and were mere statements of general truths well within the understanding and agreement of all persons, including the jury. They were followed by a correct definition of what constitutes ordinary care, and a statement that "A failure to obey the provisions of the statute which requires a person to do certain things, is a failure to exercise ordinary care." The charge as a whole clearly indicated that the exercise of ordinary care was the test by which the conduct of the respective drivers was to be measured. The statements of the court complained of were impressive rather than misleading, and it is unnecessary to give this complaint further consideration.

There remains to be considered the question of whether the damages are excessive. The plaintiff sustained severe bruises to the right wrist, right forearm and leg, and numerous bruises all over the right side of the body. She had marked pain and swelling for probably eight or nine months, between the chest and the abdomen, which was quite painful. She had laceration on the inside of the right cheek and jaw, and her teeth were sore with tenderness about two or three weeks. She had a severe shock to her nervous system and required medical attention for about a year. She had numerous scars on her face. These scars are described in the respondent's brief as follows: "a deep scar on the forehead practically an inch in length; a scar above the right corner of the mouth about an inch and a quarter in length, V-shape, extending down and up to the corner of the mouth, and below there is a similar scar about a quarter of an inch in length. These are ragged scars, and in healing they have formed an adhesion and a ragged depression so that when

she smiles this corner of her mouth is pulled down; a scar about an inch and a quarter long in front of the right ear, and a large horseshoe scar on right cheek about three inches long. The most disfiguring part of this scar is not only the depression in the scar, but it pulls the lower eyelid down. As she grows older that will probably increase, as will the pulling of the corner of the mouth, with a complete change of expression on this side of the face."

These scars are permanent, except as they may be removed by plastic surgery. The expense of such an operation is variously estimated by expert witnesses at from $2,000 to $3,000. Her damages were assessed at $6,000. Probably $1,500 would not be excessive for the damages she sustained apart from the scars. This would leave $4,500 attributable to the scars. In *Krutza v. Milwaukee B. & B. Club Co.* 195 Wis. 5, 216 N. W. 491, the plaintiff, while in a beauty parlor, sustained a burn which left a scar on the back and top of the head, where no hair remained, and which condition was permanent. By combing her hair directly back the scar could be largely covered so as not to be very noticeable. This scar constituted the principal portion of her damages, for which she was awarded $5,000. This court reduced the damages to $3,000. The reported cases do not afford many illustrations of the damages which have been awarded for the disfiguration of a woman's face. That such damages are serious none will deny. They affect the life prospects of women. They impair their attractiveness and cause them more or less anguish of mind. In this case the jury had a right to believe that the necessary surgical operation to remove these scars would cost $3,000. This was a proper element to be taken into consideration. Under all the circumstances we cannot say that the damages are excessive.

*By the Court.*—Judgment affirmed.