FRANK CHRISTENSEN, plaintiff-appellee, v. DES MOINES STILL COLLEGE OF OSTEOPATHY AND SURGERY, appellant, and DR. BYRON E. LAYCOCK, defendant-appellee.

No. 49105.

(Reported in 82 N.W.2d 741)

MAY 7, 1957.

Alex M. Miller, of Des Moines, for defendant-appellant and defendant-appellee.

Steward & Crouch, of Des Moines, for plaintiff-appellee.

LARSON, J.—While appellant enumerates seven alleged errors relied upon for reversal, it argues but two propositions, i.e. (1) that the defendant is not responsible for the negligence of its students when doing clinical duties of a professional nature, and (2) that the verdict returned is excessive. We propose to consider these propositions in that order and shall refer to the facts in the discussion. Under the well-known and well-established rules of this court we must, of course, view the evidence most favorably to the prevailing party.

Plaintiff, 40 years of age, an employee of the John Deere plant in Des Moines, experienced some trouble with his back and, having been referred to Dr. Byron E. Laycock, a licensed practitioner of osteopathy and a professor and instructor on the faculty of the defendant Des Moines Still College of Osteopathy and Surgery, requested and received ten or twelve treatments by the doctor from the spring of 1951 until November 5, 1952. Shortly before November 5 Doctor Laycock suggested that plaintiff go through the clinic owned and operated by the defendant college, which the doctor explained would involve a complete physical examination, X rays and a series of treatments to be administered by Doctor Laycock himself.

On November 5, 1952, about 3:30 p.m., plaintiff presented himself at the clinic desk, which he said was the same for both school and clinic and was the same place he reported to take prior treatments from Doctor Laycock. He said he "was assigned to a student that was to take me around and give me my physical examination." This senior student, Beverly L. McCaleb, immediately took plaintiff across the street to the hospital for X rays which were taken by a girl X-ray technician. Then plaintiff was returned to the room where Doctor Laycock had given him treatments and he was directed to prepare for a heat treatment. He said: "I removed my shirt and undershirt and was stretched out, my face down, and given heat treatment. I laid there for twenty or thirty minutes. * * * Before he started Mr. McCaleb did not say anything about what he was going to do. * * * He came in and said 'How do you feel?' and I said, 'Pretty good and relaxed'. He had told me * * * that Doctor Laycock was out and possibly by the time I finished the heat treatments he would be back."

Plaintiff further testified: "* * * I'll never know to this day, he seemed to take both hands and give me a punch on my back that hurt severely and I said at the time, 'Don't ever do that again; that hurt. You hurt me.' 'Well, I'll fix that'", and as the student did it a second time plaintiff passed out from "terrific" pain. No one was there except McCaleb, and he undertook to help plaintiff to his feet, but he passed out again and lay on the floor. The student was gone when he "came to",

but returned shortly with two men who appeared to be interns or doctors from the hospital. One of those gave him "some kind of tablet", later identified as an aspirin tablet, to help reduce the pain. Plaintiff objected to being taken to the hospital and called a friend, who with his son came for him. He was carried to the car, taken home, and later removed by ambulance to the Veterans Hospital in Des Moines. Some two weeks later, when other treatments were ineffective, he was operated upon and found to have a ruptured disc. Several doctors testified in their opinion the manipulation at the Still Clinic probably did precipitate the ruptured disc, and the neurosurgeon who performed the operation was of the opinion any manipulation could have precipitated the ruptured disc, depending upon how much pressure was exercised and the pre-existing condition of the disc prior to that time.

I. Defendant college contends, while there may be some competent and substantial evidence as to the negligence of its student McCaleb, his acts at the time were of a professional character, and for that the corporation could not be held liable. It says negligence is a failure to perform a legal duty, and, under the theory upon which this case was submitted to the jury, the corporation must be shown to owe a legal duty to provide plaintiff, through its agent McCaleb, professional care and treatment ordinarily provided by practitioners of osteopathy in and about Des Moines at that time. It relies upon our decision in State v. Kindy Optical Co., 216 Iowa 1157, 248 N.W. 332, as authority for the proposition that a corporation cannot and does not owe a legal duty to provide professional services through employees under the corporation control. Also see Frost v. Des Moines Still College of Osteopathy and Surgery, 248 Iowa 294, 79 N.W.2d 306; State v. Bailey Dental Co., 211 Iowa 781, 234 N.W. 260; State v. Fremont Co-op. Bur. Assn., 222 Iowa 949, 270 N.W. 320; Brown v. Moore, D. C. Pa., 1956, 143 F. Supp. 816; Huber v. Protestant Deaconess Hosp. Assn., 1956, Ind. App., 133 N.E.2d 864; Bartron v. Codington County, 68 S. D. 309, 2 N.W.2d 337, 140 A. L. R. 550.

It is true plaintiff did allege and the trial court did submit the issue as to defendant's guilt of negligence in the *professional* care and treatment of the plaintiff, in that it did not use the

ordinary care and treatment of the plaintiff's ailment that was usually and ordinarily used and employed by practitioners of osteopathy of the same school; in that it failed to properly diagnose the plaintiff's condition and thus failed to discover that the type of treatment administered would likely be injurious to him; and in so treating the plaintiff it improperly used such force and violence as to inflict injuries upon him.

There is little doubt but what students and interns not yet licensed to practice osteopathy perform certain administrative or semiprofessional tasks assigned them by the clinic authorities, and in doing so are servants or employees of the corporation. We do not understand that defendant contends otherwise. See Frost v. Des Moines Still College of Osteopathy and Surgery, supra; Moeller v. Hauser, 237 Minn. 368, 54 N.W.2d 639, 644, 645; St. Paul-Mercury Indemnity Co. v. St. Joseph's Hospital, 212 Minn. 558, 4 N.W.2d 637; 41 Am. Jur., Physicians and Surgeons, section 116, page 227; 26 Am. Jur., Hospitals and Asylums, section 14, page 595. Therefore, the real issue here to be determined is whether, while performing the alleged professional task of administering to plaintiff a so-called treatment, the student McCaleb could be found by the jury to be an agent or employee such as to incur liability on the defendant corporation. Noren v. American School of Osteopathy, 223 Mo. App. 278, 2 S.W.2d 215, 220; Stanhope v. Los Angeles College of Chiropractic, 54 Cal. App.2d 141, 128 P.2d 705. It is seriously contended by defendant that, while it may be different in some jurisdictions, no one in Iowa may practice the healing arts, one of which is osteopathy, unless licensed to do so, and then only individuals, not corporate entities, qualify; that an unlicensed person cannot have authoritative control of licensees in performing professional tasks directly or indirectly. State v. Kindy Optical Co. and State v. Bailey Dental Co., both supra. Many decisions across the land sustain that position, and authorities generally agree with its soundness. See annotation, 103 A. L. R. 1240 to 1248; Frost v. Des Moines Still College of Osteopathy and Surgery, supra.

The relationship of patient and doctor, even when the patient is confined in a hospital, is usually referred to as that

of an independent contractor, and under the general rule such services may not be legally furnished by a third party not licensed. We have no quarrel with that proposition generally, but we are here faced with a new and somewhat different proposition. From a rather careful search of the cases, it is new elsewhere as well. Only one other case was found which approached the problem of liability for the negligent acts of medical students or interns. While Nickley v. Skemp, 206 Wis. 265, 268, 269, 239 N.W. 426, 427, 428, is not exactly in point, in that case as here the corporation assigned individuals to the care of a patient in the hospital, and the court, in overruling a demurrer, held it "is a sufficient allegation that they owed to the patient the performance of such duties as are ordinarily performed by those occupying similar positions in said hospital." It said: "The complaint alleges with particularity the respects in which it is claimed the defendants were negligent. Their negligence must be predicated upon the unfaithful performance of a corresponding duty, hence an allegation that they negligently performed, or entirely failed to perform, a specific duty is equivalent to an allegation that the relation which they had assumed towards the patient, or to which they had been assigned by hospital authorities," imposed the performance of the duty. The court further stated: "Neither can it be said that the performance of the duties with which it is alleged the defendants were charged would have been unlawful for them to perform. The law recognizes that a hospital internship of at least twelve months is required before a license to practice medicine shall be granted. While by section 147.14, Stats., no person shall practice, or hold himself out as authorized to practice, medicine without securing the license or certificate therein required, yet by section 147.15, Stats., an internship is required as a part of one's medical education before one can be licensed to practice. *This is a legal sanction of the performance of such duties on the part of interns as are usually and ordinarily performed by them."* (Emphasis supplied.)

Obviously many services offered by such an approved college clinic and hospital to the public must be classed as services ordinarily understood to be professional. Clearly there is no

816

such relationship between its students and interns and the clinical patient as is usually found in a doctor-patient situation. These students and interns are not independent contractors in any sense of the word. They are servants of the college or clinic, and the patient who enters such a college or hospital clinic for professional services looks, not to the student, but to the corporation or institution to provide that degree of care usually exercised by personnel of ordinary skill, ability and prudence engaged in that school of healing. Hogan v. Hornbeck, 282 Ky. 574, 138 S.W.2d 1032; Stuart Circle Hosp. Corp. v. Curry, 173 Va. 136, 3 S.E.2d 153, 124 A. L. R. 176.

Although unlicensed, one who acts as a practitioner of a profession through students, interns or other servants under legal sanctions to do so assumes duties which if not performed or not performed properly may constitute actionable negligence. This, of course, applies to corporate or other legal entities, with the possible exception of the Sovereign.

Section 150.4, Code of 1954, provides the requirements for a license to practice osteopathy, and clearly no corporation could so qualify. However, section 150.6, Code of 1954, relating to approved colleges states:

"* * * Such professional course shall require a specific and published schedule of study and clinical practice for the entire school period, and this schedule shall include a study of: * * *

"4. Practice of osteopathy as applied to the diagnosis and treatment of human diseases, including clinical practice; * * *."

Obviously such clinic and hospital is a necessary adjunct of the school, and its operation and such undertakings to the public are sanctioned under the law. Carver Chiropractic College v. Armstrong, 103 Okla. 123, 229 P. 641. The operators of the school and clinic are required to and do place over the students supervisors and instructors who are expected to give reasonable supervision and guidance to the students undertaking to perform the acts otherwise known as professional services for any patient who submits himself to the school for clinical practice. The record discloses McCaleb was required to attend fifty patients before he was eligible to graduate, and he said "Mr. Christensen was one of fifty patients" he treated.

From the record we learn plaintiff presented himself to the clinic for examination, care and treatment. He was assigned to the senior student McCaleb, who had been placed under the supervision of Doctor Laycock. Under the usual practice the examination was started by McCaleb, but while the doctor was absent; this student prepared and attempted to give the plaintiff a treatment, using what is alleged to be too violent as well as an improper manipulation considering his ailment. There was substantial evidence that the diagnosis was not carefully or fully completed prior to this unsupervised manipulation. This, if found to be true, was substantial evidence of a failure to perform a clinical duty owed plaintiff. Although the supervisor approved tentative diagnosis at the clinic was chronic sacroiliac lesion, it is interesting to note the testimony of Doctor Laycock wherein he said he warned this student against the use of a "corrective force" in such a treatment, for the reason that his suspicions were aroused as to the condition of plaintiff's discs and he intended to have what is called a myelogram to determine whether or not there were structural faults. This had not been done when the force was applied by McCaleb, and also could have been found by the trier of facts a failure to exercise due care in completing the diagnosis prior to the treatment provided.

We are satisfied there was substantial evidence (1) of the assumption of a legal duty by the college, (2) of the agency relationship of the student and the college, (3) of the negligence of the student in failing to use due care in the performance of his required service, and (4) of the failure of the college through him to render the treatment and care required. Stanhope v. Los Angeles College of Chiropractic, supra; Garfield Memorial Hosp. v. Marshall, 92 App. D. C. 234, 204 F.2d 721, 725, 37 A. L. R.2d 1270; Rice v. California Lutheran Hosp., 27 Cal.2d 296, 163 P.2d 860, and cases cited therein; Mesedahl v. St. Luke's Hosp. Assn., 194 Minn. 198, 259 N.W. 819; State ex rel. American School of Osteopathy v. Daues, 322 Mo. 991, 18 S.W.2d 487.

The trial court instructed, the care necessary was the exercise of that knowledge, skill and care which were ordinarily exercised by senior students of osteopathy as a body at the

time and place in question. No objection to this instruction was taken by plaintiff, but we may observe in passing that it was most favorable to defendant, for the law requires, we think, not only "the average of the reasonable knowledge, skill and care ordinarily exercised by senior students of osteopathy" on that date in that community, but the exercise of that degree of care, skill and diligence used by the osteopathic profession at that time and place. This is the implied undertaking by such a clinic or hospital, inasmuch as persons submitting themselves to the care and treatment at such school clinics have a right to expect the necessary and proper student supervision by licensed instructors or supervisors as will insure them that protection. The law requires nothing less.

Plaintiff also argues, regardless of whether defendant college was acting legally or illegally, there was substantial evidence it agreed to and did assume the direction and control of this student. Through supervisors and instructors it undertook, even though ultra vires, to furnish the plaintiff the care and treatment required by law, and therefore must be held liable for its servant's negligence, clearly a tort. There are cases which follow this line of reasoning and perhaps this position might well justify a decision for plaintiff. Annotation, 167 A. L. R. 322; Hedlund v. Sutter Med. Serv. Co., 51 Cal. App.2d 327, 124 P.2d 878, 881; Treptau v. Behrens Spa, Inc., 247 Wis. 438, 20 N.W.2d 108; Massa v. Wanamaker Academy of Beauty Culture, 80 N. Y. S.2d 923; Glossip v. Kelly, 228 Mo. App. 392, 67 S.W.2d 513; Krutza v Milwaukee Billiard & Bowling Club Co., 195 Wis. 5, 216 N.W. 491; Lanza v. Metcalf, La. App., 25 So.2d 453; Vannah v. Hart Private Hosp., 228 Mass. 132, 117 N.E. 328, L. R. A. 1918A 1157.

██ However, we are inclined to the view that such procedure and undertaking is not illegal in Iowa, and that such practice, i.e., the diagnosis, prescription and treatment of individuals, by such an approved and licensed school is not unauthorized but rather is sanctioned by the law. See State ex rel. Bierring v. Robinson, 236 Iowa 752, 19 N.W.2d 214.

II. The jury awarded plaintiff the sum of $11,600 as damages. His prayer was for $20,000. With the exception of

the plaintiff's obligation of $784.50 fixed by the special jury determination for hospital and medical expense, and about $800 loss in wages, this verdict represents the allowance for pain and suffering. It is true plaintiff still complains of back discomfort and that his field of productive labor may be reduced somewhat due to his back condition, but nearly all the expert testimony was to the effect that he had shown satisfactory and full recovery from the operation. There is the possibility of some trouble in the future from scar tissue, but generally speaking no unusual or permanent disability appears to have resulted from this injury.

The value which should be placed upon pain and suffering, extreme and excruciating as related here, usually is best left for jury consideration, subject only to court supervision to see that excessive sums are not allowed.

It is true we have said sums that are not sustained by the evidence, which raise a strong presumption that the verdict was the result of passion, prejudice or other undue influence, that are so flagrantly excessive they imply a failure to exercise honest judgment and lawful discretion, and that are so excessive as to shock the conscience, not only should be scrutinized by the court, but it has a duty to do so. In re Estate of Hollis, 235 Iowa 753, 760, 16 N.W.2d 599; Carmichael v. Bettendorf Axle Co., 171 Iowa 221, 223, 153 N.W. 1005. If such facts clearly appear, the verdict and judgment must be set aside. 66 C. J. S., New Trial, section 76d, page 251; Ahrens v. Fenton, 138 Iowa 559, 562, 115 N.W. 233. While this rule applies to us as well as to the trial court, Royer v. King's Crown Plaster Co., 147 Iowa 277, 278, 126 N.W. 168, 169, we are somewhat reluctant to interfere with the trial court's action or inaction in this regard. A careful examination of this record discloses no situation requiring a straight reversal.

It is also true we have often said the trial court is in a better position to see and hear the witnesses and to pass on the extent and validity of claimed suffering. If the sum fixed by the jury does not shock its conscience, we often agree. See Frost v. Des Moines Still College of Osteopathy and Surgery, supra, 248 Iowa 294, 308, 309, 79 N.W.2d 306, 315. As to verdict

comparisons, we said therein: "Such verdicts * * * are not the satisfactory subject of comparison, for each case must be determined by the evidence introduced to justify the recovery claimed", citing cases.

■ Here, however, we find considerable evidence that plaintiff suffered a deteriorated disc condition prior to the acts complained of, suffered a former back injury and possible aggravation thereof, and perhaps had a structural defect of a permanent nature which would pain and disable him somewhat regardless of the injury or its care or treatment. Defendant contends with some merit that the court's Instruction No. 13, to the effect that no allowance could be made for pain and suffering incident to the previous condition of the patient or incident to proper treatment exercised with a reasonable degree of care and skill, must have been misunderstood. At least we have doubts that this situation was carefully considered and thus as to the reasonableness of the amount allowed for pain and suffering due to the injury and its natural consequences. Plaintiff is now gainfully employed at 20¢ per hour more than he was receiving at the time of the injury, and at a better position. Barring unforeseen happenings, his recovery from this injury should be permanent and complete. Under the record before us, any amount in excess of $8500 we conclude must be held to be excessive.

Therefore, if within thirty days from the filing of this opinion plaintiff should remit all of the judgment in excess of $8500 with interest and costs, the judgment will be affirmed, otherwise reversed and remanded for a new trial.—Affirmed on condition.

All JUSTICES concur.