CHARLES F. FERRIS, JR., appellee, v. DONALD F. RILEY, appellant.

No. 49890.

(Reported in 101 N.W.2d 176)

FEBRUARY 9, 1960.

Mitchell, Mitchell & Murray, by John H. Mitchell, of Fort Dodge, for appellant.

McCarville & Bennett, by Herbert R. Bennett, of Fort Dodge, for appellee.

THOMPSON, J.—This case results from a collision between automobiles owned and driven by the plaintiff and defendant in Fort Dodge on April 27, 1957. The accident occurred at night, as plaintiff was turning from Kenyon Road into Avenue D. His car was struck in the rear by defendant. He brought suit for damages claimed to have been sustained, and defendant counterclaimed. A jury trial resulted in a verdict and judgment for plaintiff in the sum of $80,000, and the defendant has appealed.

The only errors assigned are first, that evidence was improperly admitted which was incompetent under section 321.266 of the Code, which requires reports of accidents, and section 321.271, which directs that all reports shall be in writing, shall be confidential, and shall not be admissible or used in evidence in the trial of any civil case arising out of the facts on which the report is based; second, that although the court later struck such evidence from the record and admonished the jury not to consider it, its admission was error so pronounced and so material that it could not be corrected; and third, that the verdict is excessive and the result of passion and prejudice, and the trial court erred in refusing to grant defendant's motion for a new trial on that ground.

Since these are the only errors assigned or argued, it is not necessary to give consideration to the facts shown in the record

as to the manner of occurrence of the collision. Some reference must be made to the evidence of plaintiff's injuries in connection with the third assigned error. The material evidence bearing on these questions will be set out in our consideration of the errors assigned as we reach them.

I. The first claimed error concerns the admission of certain testimony of Dr. Dan Egbert, Dr. Ivan Schultz, and Duane Homan, a highway patrolman. All of this evidence dealt with the sobriety or lack thereof of the defendant. It appears that Doctor Egbert was called to the police station in Fort Dodge shortly after the accident, where he saw the defendant. He was asked if he made an examination of the defendant at that time, and defendant's counsel interposed this objection: "Objected to as incompetent, irrelevant and immaterial and it is certainly a privilege relation, any evidence with reference to the examination, if any was given, or to a conversation between this doctor and Riley, and it is strictly privilege communication." This objection was sustained. The witness was then asked who called the doctor and the objection was made that it was incompetent, irrelevant and immaterial as to who called him. This was overruled, and the witness answered that a member of the police force called him.

The witness then said he made an examination of the defendant and made certain observations. When he was asked to tell what these were, counsel said: "Objected to as incompetent, irrelevant and immaterial. The evidence is from a physician, evidence with reference to his examination, to what appears to be a patient." The doctor then said it was the first time he had ever seen Mr. Riley, who had never been his patient. He then said: "I was called down to see him for the County Attorney representing—." At this point defendant's counsel objected: "That evidence is strictly incompetent—reference as to what he was called down there for and what he was doing. It's an attempt to indirectly do something that you cannot do directly to bring into the trial of this case some alleged record of some criminal proceedings, and the proceedings would be incompetent if they were introduced here and certainly the evidence of this witness is incompetent."

Thereupon the jury was dismissed and a considerable colloquy took place, in which the court made it clear he considered the point at issue, in line with the earlier objections of the defendant, was whether the doctor was barred from testifying because of the statute prohibiting a disclosure of confidential communications from a patient; in other words, the doctor-patient relationship. The court said it would depend upon whether the doctor was called by the party himself, or by some "outsider." Counsel then said: "If he was called by the County Attorney's office, and he indicated that he was sort of representing the County Attorney's office, that is my most serious point." What he meant by this is made clear by his further statement: "I think we got into a difficult area there of evidence because if we had the record here, or if there was in existence some kind of a record, that this man had been convicted of driving a car while intoxicated, it could not be used here." Counsel further said in substance that permitting the witness to say he was called by the County Attorney and the police might be a roundabout way of getting before the jury that some criminal charge had grown out of the accident, which if offered directly would be inadmissible. The court then said it was familiar with the rule that the record in a criminal case would not be admissible; and it closed the discussion with this statement: "Well, I am not going to close the door as far as the defendant is concerned. He may make whatever record he desires. I can only meet these things as they come up from time to time, so that is as far as the Court would care to go at this time."

It is clear that up to this point the defendant's objections to Doctor Egbert's testimony had been based upon two points, the claimed doctor-patient relationship, and what he considered an attempt to get into the record some testimony concerning criminal charges by an indirect method. In addition he had made some "incompetent, irrelevant and immaterial" objections, to which we shall refer later. Nothing to this point apprised the court that any objection was made which had any bearing upon the admissibility of the testimony under our confidential report statutes, sections 321.266 and 321.271, supra.

Continuing the examination of Doctor Egbert, he was asked if he made certain observations of the defendant, and what they

were. This objection was interposed: "Objected to as incompetent, irrelevant and immaterial. The evidence is from a physician, evidence with reference to his examination, to what appears to be a patient." The objection was denied. The doctor then proceeded, without objection, to testify as to his examination: "He had an alcoholic odor to his breath and he was unable to pick up coins from the floor while he was standing on one foot. He walked a straight line with moderate swaying. He was polite, answered his questions in a co-operative manner. There was moderate generalized redness in his throat. His eyes—pupils were dilated as occurs with alcoholism. They reacted to light. His ears, his neck, heart, lungs were all negative and I took a blood test checked for alcoholic content—."

The court at this point on its own motion struck out the reference to a blood test. The witness then, in answer to a specific question, said the defendant consented to a blood test, and that he took one. No objection was lodged to this; but when the question was put "What did you do in taking it?" counsel said: "I will object to that as incompetent, irrelevant and immaterial." This was denied. Doctor Egbert then said he made a blood test, sealed the blood in a container and gave it to Patrolman Homan, who was present. He also stated he had an opinion as to whether Riley was intoxicated at that time, from his observations and examination. All this came in without further objection; but when he was asked "Will you tell what that opinion is?" objection "as incompetent, irrelevant and immaterial" was made and overruled. The witness answered that his opinion was that the defendant was under the influence of alcohol, and that this meant he was intoxicated, but not to what degree.

The following question asked the doctor to explain about the degree of intoxication, with objection "incompetent, irrelevant and immaterial," also denied. Doctor Egbert then said: "I would say he was moderately intoxicated." Counsel moved to strike this answer "as a statement of an opinion, an incompetent opinion."

After cross-examination of Doctor Egbert by defendant's counsel, the testimony of Dr. Ivan Schultz, who tested the blood sample, was admitted with no objection. Doctor Schultz testified that the sample showed 184 milligrams of alcohol per each

100 cubic centimeters of blood. Doctor Egbert had previously testified, on cross-examination, that 150 milligrams is usually considered sufficient to warrant prosecution, and that 184 milligrams indicates moderate intoxication.

Duane Homan, an Iowa Highway patrolman, testified without objection that he saw the defendant at the scene of the accident, observed that he had been drinking, as he could smell liquor on his breath, and had him taken to the police station. He observed Riley at the station, his speech was slurred, and his walk and balance were unsteady, which the witness thought indicated he had been drinking. On cross-examination by defendant's counsel, an attempt was made to interrogate this witness as to conversations with the plaintiff, Ferris, and observations he had made, aided by what Ferris told him; and at this point plaintiff's counsel objected that this would be a privileged communication. A further colloquy ensued in which the court said: "Any information procured by a patrolman or any other peace officer from either of the parties to this accident and in which he makes his report or attempts to testify is in violation of the statute, * * *."

Plaintiff's objection and the following comments of the court are the first places in the record where any question as to sections 321.266 and 321.271, or their substance, appears. At this point, substantially all of the testimony to which the defendant now takes exception as being incompetent under the confidential report statutes had been heard by the jury, without any objection based upon them.

The question of the admissibility of the evidence of Doctors Egbert, Schultz and Patrolman Homan under section 321.271 was first raised *by the defendant* at the close of the plaintiff's evidence, by a motion to strike based on that ground. The court then granted the motion by striking all of the testimony of the two doctors and that of Homan as to intoxication. It ruled that the patrolman's testimony as to his observations at the scene of the accident would stand. To this the defendant objected, on the ground that the jury would not be able to understand which part of the testimony was stricken and which remained, but the court felt this was sufficiently clear. It then advised the jury that all the testimony of Doctors Egbert and Schultz was

stricken, with the testimony of Homan as to intoxication, and they should give it no consideration in arriving at a verdict. This admonition was full and complete. The defendant then moved for a mistrial, contending that the evidence stricken was so prejudicial that no admonition could remove it from the minds of the jurors and that error prejudicial to the defendant which could not be overcome had resulted. This motion was denied. The court in its Instruction No. 16 again admonished the jury that it should give no consideration to evidence stricken from the record.

II.  In support of its assigned error No. 1, based upon the claimed inadmissibility of the evidence which was stricken, defendant relies upon Hamilton v. Becker, 249 Iowa 516, 86 N.W.2d 142; Ehrhardt v. Ruan Transport Corporation, 245 Iowa 193, 61 N.W.2d 696; Sprague v. Brodus, 245 Iowa 90, 60 N.W.2d 850; Vandell v. Roewe, 232 Iowa 896, 6 N.W.2d 295; and McBride v. Stewart, 227 Iowa 1273, 290 N.W. 700. In each of these we held certain evidence inadmissible because of the prohibition of sections 321.266 and 321.271. Whether the evidence of Doctors Egbert and Schultz, which the court struck in its entirety, or that part of the testimony of Homan which was stricken, comes within the rule of the cited cases we have no occasion to determine. No proper objection was lodged to any of this testimony at the time it was admitted, and if it was improper the court did all it could by striking it when the point was first made.

It is also appropriate to point out that if any of the testimony to which the motion to strike was directed was competent the motion would have been properly denied. We have often held that a blanket motion to strike testimony, part of which is proper and part improper, should be overruled. Polk County v. Owen, 187 Iowa 220, 223, 224, 174 N.W. 99, 102; Hay v. Hassett, 174 Iowa 601, 606, 607, 156 N.W. 734, 736; West's Iowa Digest, Trial, section 96, page 159, and cases cited.

It is also thoroughly established that a motion to strike made at the close of evidence received without appropriate objection, or based upon grounds not included in objections made, is too late and should be denied. Miller v. Davis, 193 Iowa 611, 614, 187 N.W. 433, 434; West's Iowa Digest, Trial, section 91,

page 157, and cited cases. It may be that by granting the motion to strike the testimony of Doctors Egbert and Schultz and that of the patrolman relating to intoxication the court gave the defendant something to which he was not entitled. But the plaintiff does not complain, and we make no decision.

III. It is elementary that an objection to offered evidence must be sufficiently specific to advise the trial court why it is inadmissible. The court should not be left to speculate as to whether the evidence is in fact subject to some infirmity which the objection does not point out.

In Jackson v. Chicago, Milwaukee, Saint Paul & Pacific Railroad Co., 238 Iowa 1253, 1263, 30 N.W.2d 97, 103, we said: "Ordinarily the objection should point out in what particular or particulars the offered evidence is inadmissible and where this is not done there is no proper basis for reversal unless the grounds of the objection are obvious." See also Neddermeyer v. Crawford County, 190 Iowa 883, 888, 889, 175 N.W. 339, 342.

In 3 Am. Jur., Appeal and Error, section 263, page 41, the rule is stated: "The general rule is that unless the reasons for an objection are obvious, the grounds thereof must be stated with such particularity as to call the attention of the court to the specific point, and that the appellate court will consider only such grounds of objection as are specified." The same principle is laid down in 4 C. J. S., Appeal and Error, section 290(b), page 879.

It is apparent the objections made by the defendant when the testimony of Doctor Egbert was offered did not raise the question of its admissibility under section 321.271; and no objection whatever was made to the testimony of Doctor Schultz or Patrolman Homan. Nor was the matter so obvious that the court should have known why the evidence was improper. In fact, defendant's counsel's objections to Doctor Egbert's testimony were based first, upon a supposed doctor-patient relation and its incompetency as a confidential communication; and later, when it was sought to show that he was not called by the defendant, but by the County Attorney or police, that this was an attempt to introduce into the record indirect evidence of a criminal prosecution. Not only did these objections fail to

apprise the court that the testimony was improper under the confidential report statute, section 321.271, but they directed its attention to other supposed grounds. In fact, the objections as to questions concerning who called the doctor were in direct negation of any claim of incompetency under this statute, because the whole contention about a confidential report would necessarily be based upon the thought that Doctor Egbert was called by some authority for the purpose of aiding in making this report. Yet the defendant by objection sought to keep this matter, vital to him if he were relying upon inadmissibility under section 321.271, out of the record.

IV. The defendant urges that because objection was made at various points that questions put to Doctor Egbert were "incompetent, irrelevant and immaterial", the question of inadmissibility under the confidential report sections of the Code was sufficiently specific, because the court should have been advised that matter was in contemplation of counsel through colloquies held in the absence of the jury. The difficulty with this is that all the evidence upon which error is now predicated was admitted before anything said in these discussions in any manner suggested that the point of confidential reports or investigations leading up to such reports was in the mind of counsel. We have pointed out that the first time this question was directly raised was when plaintiff's counsel objected to some parts of the cross-examination of his witness Homan. The court, in a previous colloquy, when the plaintiff was attempting to show who called Doctor Egbert and the defendant was objecting on the ground that, since the record of a criminal conviction could not be introduced, it was not proper to show a criminal charge or investigation for the same reason, had indicated that it knew of the confidential report statute and that there were certain fields connected with it into which it would not be proper to go. But this discussion concluded with the court's statement that the defendant might make whatever record he desired: "I can only meet these things as they come up from time to time, so that is as far as the Court would care to go at this time." The defendant was put on notice—although notice was not required —that it was incumbent upon him to make such record as he saw fit, and the court would rule only upon such questions as

were properly presented to him. Thereafter the point of the confidential report statutes was in no manner raised by the defendant until the plaintiff's case was closed, when the motion to strike was made.

V. We have often held that the objection "incompetent, irrelevant and immaterial" is not sufficiently specific in calling the court's attention to the reason why the proposed evidence is inadmissible. This is particularly true when reliance is placed by the objector upon incompetency. If evidence is irrelevant or immaterial, it may often be that no more specific reason can be given; but it may be thought to be incompetent on many different grounds. Thus in the instant case, counsel first urged the testimony of Doctor Egbert was objectionable because of the doctor-patient relationship; then objection was made to some portions of it that it was an indirect attempt to show a criminal prosecution; and at one point the objection was that a question called for an inadmissible conclusion. Each of these grounds, if well founded, would mean the offered testimony was incompetent. It is not asking too much of counsel to tell the court why he thinks evidence is incompetent, and this the catch-all objection does not do. Jettre v. Healy, 245 Iowa 294, 299, 60 N.W.2d 541, 544; In re Estate of Telsrow, 237 Iowa 672, 681, 22 N.W.2d 792, 798; Coad v. Schaap, 144 Iowa 240, 242, 122 N.W. 900, 901.

In the language of Justice Weaver: "A sweeping objection in general and indefinite terms is not to be made use of as a mere dragnet or screen for specific objections held in mental reservation by counsel, to be brought to light only when the case has become the subject of appellate jurisdiction. This is particularly true where the objection is made to the competency of evidence. *If it be incompetent, it is because of some reason which may or may not appear on the surface, and the court to which it is offered is entitled to know on what ground its competency is challenged.*" (Italics supplied.) Evers v. Flindt, 193 Iowa 557, 560, 187 N.W. 484, 485.

It may be that in the courtroom scenes popularly, and generally inaccurately, portrayed on television and radio, a mere "I object" or "Objection" is sufficient; but it is the good fortune of the trial courts in Iowa that something specific and definite is

required, and that reversible error may not be predicated upon an objection which does not tell the court the ground upon which it is based.

VI. Since we find no sufficient objection to the testimony of which the defendant now complains, the question as to whether the ruling of the court which struck it from the record cured the claimed error in admitting it becomes academic. As there was no error in admitting it, there was none to cure by striking it. Shortly, however, this testimony all related to evidence of defendant's intoxication. There was other evidence on this point, so that the testimony of Doctors Egbert and Schultz and of Patrolman Homan was cumulative. It does not seem more prejudicial than that admitted, then stricken, in Bachelder v. Woodside, 233 Iowa 967, 970, 971, 974, 9 N.W.2d 464, 466, 467. In that case the court first admitted testimony of a highway patrolman of admissions made by the defendant which showed him to have lost control of his car and to have been on the left-hand side of the road at the time of the collision, and later struck it. We held no reversible error resulted.

VII. Plaintiff's petition prayed judgment for $80,447.99 actual and $50,000 exemplary damages. The claim for exemplary damages was not submitted to the jury. No exception to this is taken by the plaintiff. The verdict returned was based entirely upon actual damages. Defendant's third assigned error asserts the size of this award demonstrates passion and prejudice, and for that reason he did not have a fair trial. The trial court disagreed by denying his motion for new trial.

In his motion for new trial and in oral argument the defendant urged that the verdict in an amount only a few hundred dollars less than the sum claimed in plaintiff's petition in itself shows some unfairness. We are not prepared to say that juries are supposed to understand that a petitioner invariably claims much more than he expects to recover, or that something wrong appears on the face of things when the full amount asked is allowed. Granted that parties are generally liberal with themselves in their askings, we cannot predicate error upon a result which gives them the full relief prayed.

The verdict here is the largest that has come before this court in a personal injury case. It is only slightly larger,

however, than that rendered in Bradshaw v. Iowa Methodist Hospital, 251 Iowa 375, 101 N.W.2d 167. This case was reversed on other grounds without discussion of the size of the verdict. The decreased purchasing power of the dollar, of which we have taken judicial notice in Weilbrenner v. Owens, 246 Iowa 580, 589, 68 N.W.2d 293, 298, and cases cited therein, with the concurrent increased cost of living, is leading inevitably to larger verdicts in dollar amounts. This points up one facet of the principle which we have long announced in considering damage awards: i. e., that each case must depend upon its own facts, and precedents are of little value. Soreide v. Vilas & Co., 247 Iowa 1139, 1153, 78 N.W.2d 41, 50. We therefore turn to a consideration of the injuries shown in the record which the jury might find were sustained by the plaintiff. That they were severe is not in dispute. In fact, the defendant offered no evidence upon the question of damages; and he concedes in his brief that "The out-of-pocket expenses for hospital and doctor bills was substantial and the plaintiff was laid up for about twenty-four months. His loss of earnings and his out-of-pocket expenses are $10,362.05, as indicated in the facts statement." Plaintiff claims his medical and hospital expense to the date of the trial and his loss of income were considerably larger. He was 40 years of age at the time of the accident, employed as a salesman of automobiles at a monthly guarantee of $225 plus commissions. He testified "I never made less than $100 per week."

His serious injury was to his back. He went to the hospital on April 28, the day following the accident, and was there until June 22 next. He was discharged from the hospital on the latter date, with orders to stay in bed at home except for daily trips to the hospital for therapy. His condition did not improve, and on July 20 he returned to the hospital and was there until November 9 following. On September 26 he was operated upon by Dr. Roy Sebek, a specialist, who had been called by Dr. Emerson B. Dawson who had first treated him. This operation was decided upon after other treatment had proven ineffective. In the operation a bone segment was taken from his left leg and placed in his back, where the bone so taken, about three fourths of an inch wide and eight inches long, was used to correct a bulging disc and nerve irritation.

Following the operation the plaintiff was placed on a striker frame, a device which kept him rigid on his back for four hours and on his abdomen for the next three, for five weeks. The leg from which the bone was taken had not healed at the time of the trial.

The record shows without contradiction that the plaintiff suffered much pain, to say nothing of great discomfort, for two years, and that he had not entirely recovered at the time of the trial. Doctor Dawson was of the opinion that Mr. Ferris had between 25 and 50% permanent disability; on cross-examination he said that orthopedic surgeons estimate a 25% disability on a patient having the surgery plaintiff had. Doctor Sebek thought the operation had been successful, the bone grafts are in excellent position, the back in good alignment and "there is progress well along in the fusion so that I would expect that area to be quite solid, and the leg is healing." He also said the leg is not completely healed, was about two thirds filled in, and could cause Mr. Ferris pain for an indefinite time; but will eventually heal. He wore a leg brace for 11 months, and at the time of the trial was wearing a surgical bandage.

Since no two cases are identical in the area of damages suffered, we shall not further elaborate on the evidence of plaintiff's injuries. He says his actual expense is $4022.55 hospital bill, $1539.50 doctor expense, and $8900 loss of earnings, a total of $14,462.05. These are very substantial items, tending strongly to support a considerable allowance of damages. On the other hand, he testified "My doctor released me Monday of this week for work, and as soon as I am through with this case I am going right back to work for Ed Breen."

We find nothing in the record which indicates the jury was actuated by passion or prejudice in arriving at its verdict. The defendant urges that the evidence of intoxication given by Doctors Egbert and Schultz and Patrolman Homan, which was later stricken, proves that the large verdict returned must have been inspired by such passion and prejudice as to invalidate it. We have pointed out that this evidence was received without proper objection. In addition there was other testimony, from the plaintiff and from one William Habhab, a spectator at the

scene of the accident, that the defendant was intoxicated, or as Habhab put it, "Well, I would say he was kind of lit up, I would say that he had been drinking." The question of intoxication was before the jury even without the stricken evidence, which was only cumulative. We agree with the trial court that no improper motive for the jury's verdict appears.

VIII. However, even with our conclusion expressed in the preceding division, there remains the question of whether the amount allowed failed to administer substantial justice. If, although passion and prejudice does not appear, the verdict is so large that it appears to be beyond the limits of fair compensation for the injuries shown, it is within our power, in fact it is our duty, to correct the error by requiring a remittitur on pain of a grant of a new trial. We must take care that we do not invade the province of the jury in so doing; but we have often held that such procedure is required to overcome a manifest mistake in the allowance made. Jurgens v. Davenport, Rock Island and Northwestern Railway Co., 249 Iowa 711, 723, 88 N.W.2d 797, 805; Christensen v. Des Moines Still College of Osteopathy and Surgery, 248 Iowa 810, 820, 82 N.W.2d 741, 747; Soreide v. Vilas & Co., 247 Iowa 1139, 1154, 78 N.W.2d 41, 50; Curnutt v. Wolf, 244 Iowa 683, 689, 57 N.W.2d 915, 919; Booth v. General Mills, Inc., 243 Iowa 206, 210, 49 N.W.2d 561, 563.

We think the verdict rendered here was so excessive as to require application of the rule set out above in this division. Without doubt there was a showing of substantial injury, causing heavy expense and loss of earnings, much pain and suffering, and testimony from which the jury could properly find partial permanent disability. But the plaintiff had been discharged by the doctor as able to resume work and from his own testimony had a position waiting for him which he expected to accept immediately upon the close of the trial. We conclude a verdict and judgment of $55,000 is the largest amount which the rule of fair compensation will permit, and that any amount in excess thereof is excessive.

It is accordingly the judgment of this court that the case is affirmed, on condition that the plaintiff shall, within thirty

days from the filing of this opinion file a remittitur of all the judgment in excess of $55,000 with interest on such excess; otherwise a new trial will be granted.—Affirmed on condition.

All JUSTICES concur.